**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS JOSEPH POWELL;<br>BARRY D. ROMERIL;<br>CHRISTOPHER A. NOVINGER;<br>RAYMOND J. LUCIA;<br>MARGUERITE CASSANDRA<br>TOROIAN; GARY PRYOR;<br>JOSEPH COLLINS; REX SCATES;<br>MICHELLE SILVERSTEIN;<br>REASON FOUNDATION; CAPE<br>GAZETTE; NEW CIVIL<br>LIBERTIES ALLIANCE,<br><br>*Petitioners*,<br><br>v.<br><br>UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,<br><br>*Respondent*. | No. 24-1899<br><br>OPINION |

On Petition for Review of an Order of the
Securities and Exchange Commission

Argued and Submitted February 13, 2025
Honolulu, Hawaii

2                POWELL V. USSEC

Filed August 6, 2025

Before: Sidney R. Thomas, Daniel A. Bress, and Ana de
Alba, Circuit Judges.

Opinion by Judge Bress

## **SUMMARY**[*]

### **Securities and Exchange Commission**

The panel denied a petition for review of the Securities
and Exchange Commission's denial of a request to amend
SEC Rule 202.5(e), which reflects SEC policy that the
agency will not settle a civil enforcement action unless the
defendant agrees not to publicly deny the allegations against
him.

The panel rejected petitioners' facial-type challenge to
Rule 202.5(e) under the First Amendment. The panel
clarified that petitioners' challenge before the court is that it
violates the First Amendment for civil enforcement
defendants to agree on a voluntary basis not to deny the
allegations against them in return for the SEC agreeing to
settle its securities law charges, with the limited remedy that,
if the defendant does later publicly deny the allegations, the
SEC may return to court.

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Applying the Supreme Court's framework in *Town of Newton v. Rumery*, 480 U.S. 386 (1987), for evaluating a voluntary relinquishment of First Amendment rights, the panel concluded that Rule 202.5(e) is not facially invalid under the First Amendment, even though legitimate First Amendment concerns could well arise in a more particularized, as-applied type of challenge. Accordingly, the panel upheld Rule 202.5(e) against the instant facial-type First Amendment challenge, without prejudice to future challenges on more particularized records.

Finally, the panel rejected petitioners' contention that the SEC's adoption of Rule 202.5(e) violated the Administrative Procedure Act. The panel held that the SEC had statutory authority to enact Rule 202.5(e), notice-and-comment rulemaking was not required, and the SEC provided a rational explanation for its determination not to amend Rule 202.5(e).

---

### COUNSEL

Margaret A. Little (argued), Kara M. Rollins, Markham S. Chenoweth, and Kaitlyn D. Schiraldi, New Civil Liberties Alliance, Arlington, Virginia, for Petitioners.

Archith Ramkumar (argued), Appellate Counsel; Jeffrey A. Berger, Assistant General Counsel; Michael A. Conley, Solicitor; Megan Barbero, General Counsel; Securities & Exchange Commission, Washington, D.C.; for Respondent.

Michael D. Pepson and Cynthia F. Crawford, Americans for Prosperity Foundation, Arlington, Virginia; Joshua A. House, Foundation for Individual Rights and Expression,

4                          POWELL V. USSEC

Washington, D.C.; for Amici Curiae Americans for Prosperity Foundation, the Foundation for Individual Rights and Expression, and Freedom of the Press Foundation.

Nathan J. Ristuccia, Institute for Free Speech, Washington, D.C., for Amicus Curiae Institute for Free Speech.

Lawrence S. Ebner and Hannah S. Marcley, Atlantic Legal Foundation, Washington, D.C., for Amicus Curiae Atlantic Legal Foundation.

Adam E. Schulman, Hamilton Lincoln Law Institute, Washington, D.C.; Ilya Shapiro and Tim Rosenberger, Manhattan Institute, New York, New York; for Amici Curiae Hamilton Lincoln Law Institute and Manhattan Institute.

Thomas A. Berry, Brent Skorup, and Christopher D. Barnewolt, Cato Institute, Washington, D.C., for Amicus Curiae the Cato Institute.

Donald M. Falk and Eugene Volokh, Schaerr Jaffe LLP, San Francisco, California; Gene C. Schaerr, Cristina M. Squiers, and Aaron Gordon, Schaerr Jaffe LLP, Washington, D.C.; Tyler S. Badgley and Mariel A. Brookins, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae The Chamber of Commerce of the United States of America.

Nicolas Morgan, Investor Choice Advocates Network, Los Angeles, California; Devin Watkins, David McFadden, and Dan Greenberg, Competitive Enterprise Institute, Washington, D.C.; for Amicus Curiae Competitive Enterprise Institute.

Reilly Stephens, Liberty Justice Center, Austin, Texas, for Amicus Curiae Liberty Justice Center.

POWELL V. USSEC                    5

Joel S. Nolette and Michael J. Showalter, Wiley Rein LLP, Washington, D.C.; David C. Tryon and Alex M. Certo, The Buckeye Institute, Columbus, Ohio; for Amicus Curiae The Buckeye Institute.

Angela L. Brown and Chris Davis, Gray Reed & McGraw LLP, Dallas, Texas, for Amici Curiae Texas Blockchain Council and AI Innovation Association.

Thomas Brejcha and B. Tyler Brooks, Thomas More Society, Chicago, Illinois, for Amicus Curiae Thomas More Society.

---

**OPINION**

BRESS, Circuit Judge:

This is a petition for review of the Security and Exchange Commission's denial of a request to amend SEC Rule 202.5(e). *See* 17 C.F.R. § 202.5(e). That Rule reflects SEC policy, in place since 1972, that the agency will not settle a civil enforcement action with a defendant unless the defendant agrees not to publicly deny the allegations against him. If a defendant violates this provision of the settlement agreement, the SEC's remedy is to go back to the court that entered the consent judgment and ask for the case to be reopened. The petitioners claim Rule 202.5(e) violates the First Amendment.

We reject petitioners' challenge, although we do so on necessarily narrow grounds. This petition for review amounts to a facial-type challenge to Rule 202.5(e), and given longstanding precedent permitting the voluntary waiver of constitutional rights, including First Amendment

rights, Rule 202.5(e) on its face is not per se unconstitutional. Petitioners do validly argue that in application, Rule 202.5(e) could impermissibly intrude on First Amendment rights, especially if it prevents civil enforcement defendants from criticizing the SEC. We do not minimize petitioners' concerns. But these concerns are properly addressed in as-applied challenges with defined records, whether during court approval of settlements, in a pre-enforcement posture, or in response to the SEC seeking to reopen a closed enforcement proceeding for an alleged breach of a settlement agreement.

I

The SEC investigates violations of the securities laws and may bring enforcement actions in federal court. 15 U.S.C. § 78u(d)(1). Sometimes, the SEC insists that defendants admit the allegations against them as a condition of settlement. *See, e.g.*, Press Release, SEC, JPMorgan Admits to Widespread Recordkeeping Failures and Agrees to Pay $125 Million Penalty to Resolve SEC Charges (Dec. 17, 2021), https://www.sec.gov/newsroom/press-releases/2021-262; Grubir S. Grewal, Director, SEC Div. of Enf't, Remarks at SEC Speaks 2021 (Oct. 13, 2021), https://tinyurl.run/KderJu; Dina ElBoghdady, *SEC to Require Admissions of Guilt in Some Settlements*, WASH. POST, (June 18, 2013), https://tinyurl.run/E1As8b. In 1972, the SEC announced that it would not settle civil enforcement actions unless defendants, at minimum, agree not to publicly deny the Commission's allegations. Consent Decrees in Judicial or Administrative Proceedings, 37 Fed. Reg. 25,224

(Nov. 29, 1972).   Codified at 17 C.F.R. § 202.5(e), the
SEC's settlement policy is as follows:

> The Commission has adopted the policy that
> in any civil lawsuit brought by it or in any
> administrative proceeding of an accusatory
> nature pending before it, it is important to
> avoid creating, or permitting to be created, an
> impression that a decree is being entered or a
> sanction imposed, when the conduct alleged
> did not, in fact, occur.  Accordingly, it hereby
> announces its policy not to permit a
> defendant or respondent to consent to a
> judgment or order that imposes a sanction
> while denying the allegations in the
> complaint or order for proceedings.  In this
> regard, the Commission believes that a
> refusal to admit the allegations is equivalent
> to a denial, unless the defendant or
> respondent states that he neither admits nor
> denies the allegations.

The SEC refers to this as the "no-deny provision" or the "no-
admit, no-deny policy."   The petitioners call it the "gag
rule."   We will refer to it as Rule 202.5(e), or "the Rule."

    Neither the SEC nor Rule 202.5(e) mandate settlement.
But in practice, the vast majority of civil enforcement
defendants choose to settle with the SEC.  If a defendant
wishes to settle, he must acknowledge that his settlement is
voluntary and agree to abide by Rule 202.5(e).  Once a
settlement is negotiated, the defendant signs a consent
provision which typically says, among other things, that
"Defendant understands and agrees to comply with the terms

8                          POWELL V. USSEC

of 17 C.F.R. § 202.5(e)." Where the SEC has filed an action
in federal court, the settlement is incorporated into a final
consent judgment, entered by the court. Compliance with
Rule 202.5(e) does not prevent defendants from denying the
allegations in other legal proceedings, such as separate civil
litigation.

When settling with the SEC, defendants agree to waive
various rights. Many consent judgments provide, consistent
with Rule 202.5(e), that the defendant neither admits nor
denies the SEC's allegations. If a defendant breaches the
Rule 202.5(e) component of the consent judgment, the
SEC's remedy is to petition the issuing court to vacate the
final judgment and restore the case to its active docket. But
the court may also deny this requested relief.

On October 30, 2018, the New Civil Liberties Alliance
(NCLA) filed a petition requesting that the SEC amend Rule
202.5(e). Citing First Amendment concerns, the NCLA
suggested that the SEC eliminate the language preventing a
defendant from denying the SEC's allegations against him.
This proposed change, as the SEC later described it, would
"allow defendants to consent to a judgment while denying
the allegations[,] with no recourse for the Commission to
return to active litigation."

The SEC did not respond to the petition to amend for
over five years. On December 20, 2023, the NCLA filed a
renewed petition, adding various individuals as petitioners.
On January 30, 2024, the SEC denied the petition to amend,
providing a six-page letter ruling explaining why it was
maintaining its policy. According to the SEC, Rule 202.5(e)
"preserves its ability to seek findings of fact and conclusions
of law if a defendant, after agreeing to a settlement, chooses
to publicly deny the allegations." In the SEC's view, and

POWELL V. USSEC                    9

because it "does not try its cases through press releases," the
agency is "not required to choose a path whereby it waives
its right to try a case while the defendant is free to publicly
deny the allegations without any real ability for the
Commission to respond in court." The SEC further rejected
petitioners' First Amendment objections, explaining that
"[t]here is a large body of precedent confirming that a
defendant can waive constitutional rights as part of a civil
settlement, just as a criminal defendant can waive
constitutional rights as part of a plea bargain."

SEC Commissioner Hester Peirce dissented from the
Commission's denial of the petition to amend Rule 202.5(e).
She concluded that "[t]he policy of denying defendants the
right to criticize publicly a settlement after it is signed is
unnecessary, undermines regulatory integrity, and raises
First Amendment concerns." In Commissioner Peirce's
view, there is "scant factual basis" for the SEC needing Rule
202.5(e), and if the SEC has concerns about defendants
speaking out, this policy is "not the right way to protect the
Commission's reputation."

After the SEC denied the petition to amend, twelve
petitioners challenged the SEC's denial by filing a petition
for review in this court. Nine of the petitioners are
individuals, eight of whom entered settlements containing
the Rule 202.5(e) obligation. The remaining three
petitioners are organizations and entities. Petitioners
challenge the Rule on its face, claiming that it violates the
First Amendment. They also contend that the Rule was
adopted in violation of the Administrative Procedure Act
(APA).

We have jurisdiction under 15 U.S.C. § 78y(a)(1), which
permits "[a] person aggrieved by a final order of the

Commission . . . [to] obtain review of the order in the United States Court of Appeals for the circuit in which he resides" or the D.C. Circuit. Although the SEC claims that many of the petitioners lack standing or fail to meet the jurisdictional prerequisites of § 78y(a)(1), the agency agrees that one petitioner, Raymond Lucia, can maintain this petition. Our independent review confirms the same.

The SEC charged Lucia with securities law violations in 2012, and he agreed to a settlement that requires him to abide by Rule 202.5(e). Lucia resides in the Ninth Circuit, and he joined the NCLA when it renewed its petition to amend. Under all these circumstances, Lucia was "aggrieved by" the SEC's denial of the request to amend Rule 202.5(e). 15 U.S.C. § 78y(a)(1). Because "[o]nly one of the petitioners needs to have standing to permit us to consider the petition for review," *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007), and Lucia fits that bill, we proceed to the merits. *Cf. Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 907 n.2 (9th Cir. 2020) ("[R]egardless whether venue is improper as to three of the six . . . Petitioners, we can address the merits of the . . . petition.").

II

SEC Rule 202.5(e) has been in place for over five decades, much of that time seemingly without great fanfare. The record gives no indication that the SEC regularly returns to court to reopen judgments for claimed violations of Rule 202.5(e). The SEC also represented at oral argument that it is unaware of a court ever finding a defendant in contempt for violating a Rule 202.5(e) provision in a settlement agreement. Even so, in more recent years, Rule 202.5(e) has been the subject of criticism. The criticism is not necessarily uniform.

Some have suggested that Rule 202.5(e) goes too easy on civil enforcement defendants, in that it allows defendants to neither admit nor deny the SEC's allegations. Civil enforcement defendants presumably prefer "neither admit nor deny" over "admit," to prevent their settlements with the SEC from creating admissions that could later be used against them in private securities litigation. Yet some critics of Rule 202.5(e) would prefer the SEC to more frequently require admissions of wrongdoing as a condition of settlement, in the interest of greater securities law enforcement and public accountability. *See, e.g.*, *SEC v. Citigroup Glob. Markets Inc.*, 827 F. Supp. 2d 328, 332–35 (S.D.N.Y. 2011) (concluding that a consent decree that did not require the defendant to admit the SEC's allegations was "neither fair, nor reasonable, nor adequate, nor in the public interest"), *vacated and remanded*, 752 F.3d 285 (2d Cir. 2014); James B. Stewart, *S.E.C. Has a Message for Firms Not Used to Admitting Guilt*, N.Y. TIMES, (June 21, 2013), https://tinyurl.run/3p3JHF; Grewal, *Remarks at SEC Speaks 2021*.

Coming at it from the other direction are those who believe that SEC Rule 202.5(e) is too heavy-handed. Motivated by concerns about administrative agency power generally, and the SEC's enforcement powers more specifically, these critics have argued that by preventing civil enforcement defendants from publicly denying the allegations against them as a condition of settlement, Rule 202.5(e) contradicts First Amendment values. *See, e.g.*, Rodney A. Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 WIDENER L. REV. 1 (2023); Aaron Gordon, *Imposing Silence Through Settlement: A First-Amendment Case Study of the New York Attorney General*, 84 ALB. L.

REV. 335 (2021); James Valvo, Notice & Comment, *The CFTC and SEC Are Demanding Unconstitutional Speech Bans in Their Settlement Agreements*, YALE J. ON REG. (Dec. 4, 2017); *see also SEC v. Novinger*, 40 F.4th 297, 308 (5th Cir. 2022) (Jones, J., concurring); *SEC v. Moraes*, No. 22-cv-8343, 2022 WL 15774011, at *3–5 (S.D.N.Y. Oct. 28, 2022). The petitioners in this case, supported by various amici, take up this First Amendment mantle.

But as is often true when a problem of many dimensions is presented to a court, we are hemmed in by certain constraints inherent in judicial decision-making, including those arising from the type of challenge brought before us. It is not our role to second-guess the SEC's policy decisions or enforcement priorities. SEC Commissioner Peirce and others have challenged the wisdom of Rule 202.5(e), but the wisdom of regulatory policy lies outside our authority. Nor is it within our authority to decide what rules would most promote public confidence in the SEC.

Deciding whether an agency action violates the First Amendment is, of course, very much within our authority. But the challenge before us is a petition for review of the SEC's denial of a request to amend Rule 202.5(e). The petition does not seek relief as to any one civil enforcement defendant based on his or her facts and circumstances, the language of any particular consent judgment, or the threatened actions of the SEC as to that defendant. The petition for review instead maintains that Rule 202.5(e) is per se unconstitutional, that is, unconstitutional across the board. In this sense, the petition is properly analyzed as a facial challenge. For facial challenges in the First Amendment context, we ask "whether 'a substantial number of [the Rule's] applications are unconstitutional, judged in relation to the [Rule's] plainly legitimate sweep.'" *Moody*

POWELL V. USSEC                    13

*v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quoting A*mericans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)); *see also, e.g.*, *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1115 (9th Cir. 2024).

Petitioners rightly point out that we should be concerned about any effort *by* the government to limit criticism *of* the government, including criticism offered by those whom the SEC claims violated the law. Those that the SEC has charged with securities law violations may have a particularly valuable perspective on government enforcement efforts, or at least one that is entitled to be considered in the marketplace of ideas. If the SEC utilized Rule 202.5(e) to prevent criticism of the agency, its officers, or its enforcement programs, the Rule would likely raise substantial First Amendment concerns in application. But what we have before us is a more discrete and stylized challenge, namely, that it assertedly violates the First Amendment for civil enforcement defendants to agree on a voluntary basis not to deny the allegations against them in return for the SEC agreeing to settle its securities law charges, with the limited remedy that, if the defendant does later publicly deny the allegations, the SEC may return to court with no guarantee that a court will reopen the case.

The law has long regarded the voluntary relinquishment of constitutional rights as permissible, so long as appropriate safeguards are attached. And when we apply the Supreme Court's and our court's framework for the voluntary waiver of rights, we conclude that Rule 202.5(e) is not facially invalid under the First Amendment, even though legitimate First Amendment concerns could well arise in a more particularized type of challenge.

III

A

The starting point for our analysis is that Rule 202.5(e) cannot be abstracted from the circumstances that bring the Rule into effect, namely, a defendant's voluntary decision to settle with the SEC and his voluntary agreement to abide by the Rule's requirements. Rule 202.5(e) is not simply a speech-restricting rule, but a rule that defendants voluntarily accede to in return for substantial benefits.

In proper circumstances, rights, including constitutional rights, can be waived. There is a "background presumption that legal rights generally . . . are subject to waiver by voluntary agreement of the parties." *United States v. Mezzanatto*, 513 U.S. 196, 203 (1995). Indeed, "'in the context of a broad array of constitutional and statutory provisions,'" the Supreme Court has "articulated a general rule that presumes the availability of waiver." *New York v. Hill*, 528 U.S. 110, 114 (2000) (quoting *Mezzanatto*, 513 U.S. at 201). And when a party by agreement has "waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

We frequently see these waivers of rights in the criminal context, especially for guilty pleas. A defendant "may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," including the right to a jury trial, the right to confront one's accusers, and so on. *Mezzanato*, 513 U.S. at 201 (citing *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938)). Criminal suspects may likewise

waive their right to remain silent and their right to counsel, so long as they have been properly informed of those rights. *See, e.g.*, *Davis v. United States*, 512 U.S. 452, 458, 460 (1994). As the Supreme Court has explained, "[a]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Corbitt v. New Jersey*, 439 U.S. 212, 218 n.8 (1978) (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)).

Although there are limitations on the waiver of First Amendment rights—just as there are limitations and protections associated with the waiver of other rights—First Amendment rights can be waived. "The Supreme Court has held that First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary[,] and intelligent." *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993) (citing *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 187 (1972)); *see also, e.g.*, *SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021) ("[P]arties can waive their First Amendment rights in consent decrees and other settlements of judicial proceedings."); *Lake James Cmty. Volunteer Fire Dep't v. Burke Cnty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998); *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1315 (8th Cir. 1991); *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1099 (3d Cir. 1988) ("[W]e know of no doctrine . . . providing a *per se* rule that constitutional claims, even [F]irst [A]mendment claims, may not be waived."); *Kausal v. George F. Nord Bldg. Corp.* (*In re George F. Nord Bldg. Corp.*), 129 F.2d 173, 176 (7th Cir. 1942).

Although we do not typically think of it in these terms, a guilty plea effects a certain inevitable infringement of First

Amendment rights, in that a criminal defendant agrees to say something about his guilt in return for a substantial benefit. Guilty pleas can also include provisions precluding the right to appeal—a form of First Amendment petitioning activity. *See, e.g.*, *United States v. Wells*, 29 F.4th 580, 585 (9th Cir. 2022). And pleading guilty to a crime can result in even further First Amendment infringements, considering that a guilty plea can lead to imprisonment, and in prison First Amendment rights are reduced. *See, e.g.*, *Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Turner v. Safley*, 482 U.S. 78, 89–91 (1987).

We encounter waivers of the right to speak outside of the criminal context, as well. Government employees can agree to restrictions on their First Amendment rights as a condition of employment. *See, e.g.*, *Snepp v. United States*, 444 U.S. 507, 509 & n.3 (1980) (per curiam) (explaining that although "Snepp relies primarily on the claim that his agreement is unenforceable as a prior restraint on protected speech," "[w]hen Snepp accepted employment with the CIA, he voluntarily signed the agreement that expressly obligated him to submit any proposed publication for prior review"). Judicially enforceable non-disclosure and non-disparagement agreements are commonplace. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 665, 672 (1991); *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 621–22 (D.C. Cir. 2023); *Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1068 (8th Cir. 2020). And public sector employees who are not union members can agree to pay fees to a public sector union, thereby "waiving their First Amendment rights." *Janus v. American Fed'n of State, Cnty., & Mun. Emps. Council 31*, 585 U.S. 878, 930 (2018). No doubt there are other examples.

POWELL V. USSEC                    17

Our court and other circuits have held that a waiver of
First Amendment rights should be analyzed under the
Supreme Court's decision in *Town of Newton v. Rumery*, 480
U.S. 386 (1987). *See Leonard*, 12 F.3d at 890; *Davies v.
Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396–97
(9th Cir. 1991); *Lake James*, 149 F.3d at 280; *Erie
Telecomms.*, 853 F.2d at 1099.

In *Rumery*, the Supreme Court upheld an agreement in
which a defendant released his right to bring a civil rights
action under 42 U.S.C. § 1983 in exchange for the
prosecutor dismissing pending criminal charges against him.
480 U.S. at 389, 398. Observing that "it is well settled that
plea bargaining does not violate the Constitution even
though a guilty plea waives important constitutional rights,"
*Rumery* declined to establish "a *per se* rule of invalidity" for
all waiver agreements. *Id.* at 393, 395. In "many cases," the
Supreme Court explained, a defendant's "choice to enter"
into a waiver agreement "will reflect a highly rational
judgment that the certain benefits" of ending the litigation
exceed the benefits of what he is giving up. *Id.* at 394. And
that a waiver of rights could be "coercive" in some cases did
not "justify invalidating *all* such agreements." *Id.* at 393;
*see also id.* ("We see no reason to believe that release-
dismissal agreements pose a more coercive choice than other
situations we have accepted.").

Accordingly, *Rumery* held that in this context, "a
promise is unenforceable if the interest in its enforcement is
outweighed in the circumstances by a public policy harmed
by enforcement of the agreement." *Id.* at 392; *see also id.* at
392 n.2 ("The threshold question is whether compelling a
defendant to decide whether to waive constitutional rights
impairs to an appreciable extent any of the policies behind
the rights involved.") (brackets omitted) (quoting

18                    POWELL V. USSEC

*McGautha*, 402 U.S. at 213). In Rumery's case, he "voluntarily entered the agreement," and "enforcement of this agreement would not adversely affect the relevant public interests." *Id.* at 398. The Supreme Court thus recognized that the waiver of rights can be permissible, even when they force parties to make "difficult choices." *Id.* at 393.

We have applied *Rumery* in two key First Amendment cases: *Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993), and *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991). In *Leonard*, we upheld a provision in a collective bargaining agreement, referred to as Article V, that required a public employee union to bear the costs of any new economic or benefit improvement endorsed or sponsored by the Union that caused "increased payroll costs" to the municipality. 12 F.3d at 886. The contractual language was originally proposed by the Union and then included in successive collective bargaining agreements. *Id.*

We first determined that the Union's waiver of "the full and unrestricted exercise of its First Amendment rights" in the collective bargaining agreement was "knowing, voluntary[,] and intelligent." *Id.* at 889–90. Although the Union informed the city during contract negotiations that Article V was unconstitutional, this objection did not make "the Union's execution of the agreement any less voluntary." *Id.* at 890. Indeed, we explained, "[i]f the Union felt that First Amendment rights were burdened by Article V, it should not have bargained them away and signed the agreement." *Id.*

Because *Rumery* nominally involved the waiver of a "statutory remedy," *Davies*, discussed below, had earlier left open the possibility that "a stricter rule" may be appropriate in cases involving waivers of constitutional

rights, 930 F.2d at 1397 (emphasis omitted).  But *Leonard*
applied the *Rumery* framework and expressly "decline[d] to
adopt a stricter standard" in the constitutional context.  12
F.3d at 891 n.8.  Under a *Rumery* analysis, we identified in
*Leonard* two policies supporting enforcement of the waiver
at issue: the "public interest in the stability and finality of
collective bargaining agreements," and the "public interest
in the finality of a compensation package between a city and
a group of its employees." *Id.* at 891. But we also recognized
the "public interest in the Union's unfettered ability to
present its views to the state legislature." *Id.*

In upholding the waiver of presumed First Amendment
rights, we found it significant that Article V of the collective
bargaining agreement did "not ban *all* Union speech" and
was "narrowly tailored to achieve the City's goal of
budgetary predictability." *Id.*  There was also a sufficient
nexus between the "dispute resolved in the" collective
bargaining agreement and the restriction placed on the
Union's First Amendment rights. *Id.* at 891 n.10.  And
"[e]ven in those areas affected by Article V," the Union
could "endorse benefit-increasing legislation if it fe[lt] that
the benefits to be gained by passage of the bill [we]re more
valuable than the salary foregone." *Id.* at 892.  Accordingly,
"[b]ecause Article V [wa]s a relatively narrow limitation on
the Union's political speech," we could not "find that the
public policy in favor of the Union's completely unfettered
freedom of expression outweigh[ed] the public interests in
the finality of collective bargaining and the predictability of
municipal budgets." *Id.*  The Union's constitutional
arguments were relevant to our analysis, but they could not
by themselves invalidate the waiver, because "[i]f
constitutional arguments always outweighed ones grounded
in other sources of law, then we could never enforce

20          POWELL V. USSEC

individuals' waivers of their constitutional rights, an outcome that would fly in the face of a long line of Supreme Court precedent." *Id.* at 892 n.12.

We applied the same *Rumery* methodology in *Davies*, although there we concluded that the waiver was invalid. 930 F.2d at 1392. Davies and his spouse, a teacher, sued the school district over a dispute relating to the spouse's employment. The parties settled. In exchange for monetary compensation, Davies and his spouse agreed not to seek employment or office within the district. *Id.* Davies later won an election for a seat on the district's board, and the district sought to enforce the settlement agreement, which would result in Davies's removal from public office. *Id.* at 1392–93. The district court granted the school district's motion to enforce the settlement and ordered Davies to resign his office immediately. *Id.* at 1393.

Applying the *Rumery* framework, we held that "the public policy favoring enforcement" of the contractual provision preventing Davies from running for office was "outweighed by the public policy served by its non-enforcement." *Id.* at 1392. The interest in non-enforcement was "of the highest order," "involv[ing] the most important political right in a democratic system of government: the right of the people to elect representatives of their own choosing to public office." *Id.* at 1397. This interest was "of critical importance" because the contractual provision not only prevented Davies from running for office but also "result[ed] in a limitation on the fundamental right to vote of every resident" in the district. *Id.* at 1398. The school district's interests in enforcement of the provision, meanwhile, were insufficient. Besides the general interest in settling litigation that would be present in every case, the district claimed that Davies's presence on the board would

be detrimental to the district, a "startling" and "pernicious" rationale that reflected "a serious abuse of the power of incumbency." *Id.* at 1398–99.

The contractual provision preventing Davies from running for office was further impermissible because it lacked a sufficient connection to the underlying employment dispute that was the subject of the earlier settlement. We explained that "[b]efore the government can require a citizen to surrender a constitutional right as part of a settlement or other contract, it must have a legitimate reason for including the waiver in the particular agreement." *Id.* at 1399. And "[a] legitimate reason will almost always include a close nexus—a tight fit—between the specific interest the government seeks to advance in the dispute underlying the litigation involved and the specific right waived." *Id.* In Davies's case, "the nexus between the individual right waived and the dispute that was resolved by the settlement agreement [was] not a close one" because "[t]he underlying dispute had little connection with Dr. Davies' potential future service on the Board." *Id.*

Cases from other circuits have also relied on *Rumery* when analyzing waivers of First Amendment rights. In *SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021), *cert. denied sub nom. Romeril v. SEC*, 142 S. Ct. 2836 (2022), the Second Circuit cited *Rumery* in rejecting a challenge to the same SEC Rule at issue here. In *Romeril*, one of the same petitioners in this case sought relief from his consent decree under Federal Rule of Civil Procedure 60(b)(4). *Id.* at 170. The Second Circuit held that Romeril's consent judgment "d[id] not violate the First Amendment because Romeril waived his right to publicly deny the allegations of the complaint." *Id.* at 172. Observing that "parties can waive their First Amendment rights in consent decrees and other

settlements of judicial proceedings," the Second Circuit saw no issue with Romeril's agreement: "A defendant who is insistent on retaining the right to publicly deny the allegations against him has the right to litigate and defend against the charges. Romeril elected not to litigate." *Id.*

Because SEC Rule 202.5(e) involves the waiver of rights by agreement, *Rumery* and the above precedents provide the proper legal framework for evaluating this petition for review. For that reason, we disagree with petitioners that Rule 202.5(e) should be analyzed as a traditional prior restraint or content-based restriction on speech, because every waiver of First Amendment rights can in some sense be described as a content-based prior restraint. We likewise disagree with petitioners that we can apply other First Amendment doctrines, like the compelled speech doctrine, without regard to the fact that the speech restriction here arises from a voluntary agreement. Although the nature of the agreed-upon speech restriction is central to the *Rumery* analysis, precedent directs that the *Rumery* framework is the proper one for evaluating a voluntary relinquishment of First Amendment rights.

B

Under the *Rumery* framework and our precedents, the specific challenge before us fails, although as we noted above, our decision is necessarily limited in nature.

To the extent the petitioners claim that *Rumery* cannot apply because defendants do not voluntarily agree to Rule 202.5(e), we disagree, at least as to the facial-type challenge presented to us. There is no basis to conclude that as to all or a substantial number of SEC defendants, their agreement to abide by Rule 202.5(e) is not "voluntary, knowing[,] and intelligent." *Davies*, 930 F.2d at 1394. Though the plaintiffs

assert that the SEC possesses outsized power, frequently settles its cases, and makes defendants' agreement to Rule 202.5(e) non-negotiable, the record also reflects that defendants in SEC enforcement actions are often sophisticated players who are represented by counsel. And ultimately, the defendants in these cases chose to settle with the SEC rather than litigate further. *See Leonard*, 12 F.3d at 890 ("If the Union felt that First Amendment rights were burdened by Article V, it should not have bargained them away and signed the agreement.").

We do not foreclose an individual defendant in any particular case from later claiming that his agreement to the terms of Rule 202.5(e) was involuntary or unknowing. But we also cannot say that generalized concerns about the SEC's powers or enforcement tactics justify a blanket conclusion that these agreements are always or very often improperly coercive. *See Rumery*, 480 U.S. at 393 (concluding that the "possibility" that "some release-dismissal agreements may not be the product of an informed and voluntary decision" given the "risk, publicity, and expense of a criminal trial" did not "justify invalidating *all* such agreements").

Nor is Rule 202.5(e) facially invalid under the *Rumery* framework. Per Rule 202.5(e), a defendant who settles with the SEC may not publicly deny the SEC's allegations, and, if he does, the SEC may seek to reopen his case in order to proceed to litigation. The Rule in its purest form allows the SEC to return things to how they were before the settlement, potentially allowing the SEC to pursue its claims in court. It is as if the civil enforcement action remains subject to reopening at the defendant's election. Rule 202.5(e) essentially tells defendants that if they come to disagree with their original decision not to publicly deny the SEC's

allegations, they may later have to defend against them. In this sense, there is a "close nexus" between "the specific interest the government seeks to advance in the dispute underlying the litigation involved"—proving the allegations supporting its enforcement actions—and "the specific right waived"—the defendant agreeing not to deny those same allegations. *Davies*, 930 F.2d at 1399. This is a far cry from a case like *Davies*, in which the restriction on Davies's ability to run for public office "had little connection" to the underlying settlement agreement. *Id.*

Indeed, the situation in the case before us is not so dissimilar from *Rumery* itself. In *Rumery*, "the criminal charges that had been filed against Rumery and Rumery's civil suit against the prosecutor involved the same incident." *Id.* (italics omitted). "In fact," as we later described it, "they were opposite sides of the coin." *Id.* "The two actions reflected the opposing parties' differing versions of what actually occurred," and "a full compromise of the dispute between the parties necessitated resolving both matters." *Id.*

Analogous in this respect to *Rumery*, any defendant who wishes to publicly deny the SEC's allegations wants to tell a different version of the story than the one reflected in his voluntarily entered settlement agreement. But instead of restricting an offsetting suit, as in *Rumery*, Rule 202.5(e) uses a different mechanism. It gives the defendant a choice: agree to "a full compromise of the dispute," *id.*, by declining to deny the SEC's version of what occurred, or speak out against the SEC's allegations and permit the SEC to attempt to litigate the facts in the same (reopened) case. This further confirms the closeness of the nexus between the government's interest and the right waived.

We also cannot say that the SEC's interest in Rule 202.5(e) is wholly illegitimate, to the point that the Rule should be struck down entirely on a petition for review. The SEC's interests are not so much weaker than the asserted interests we found sufficient in *Leonard*. *See* 12 F.3d at 891. And they do not compare to the "utterly unpersuasive" and "pernicious" anti-democratic justifications that we rejected in *Davies*. *See* 930 F.2d at 1398. The SEC explains that if it is to forego its decision to present evidence in court, the agency should have the opportunity to pursue that path if a defendant later decides to deny the SEC's allegations publicly. Accordingly, and because it does not "try its cases through press releases," the SEC maintains that its policy "preserves its ability to seek findings of fact and conclusions of law if a defendant, after agreeing to a settlement, chooses to publicly deny the allegations."

The SEC has some interest in determining how to try its cases and prove its allegations, and in deciding upon settlement terms that are most consistent with its preferred enforcement strategy. The SEC also has a related interest in offering defendants different options for addressing the SEC's allegations. The absence of a policy like Rule 202.5(e) could lead the SEC to requiring more outright admissions or settling fewer cases, which may not necessarily be in the interest of civil enforcement defendants. *See Rumery*, 480 U.S. at 394 (explaining that defendants' choice to waive rights in a settlement agreement can "reflect a highly rational judgment" about the benefits of avoiding prosecution); *Romeril*, 15 F.4th at 172. Provided that any limitation on speech remains within proper bounds, and given the background ability to waive First Amendment rights at least to some extent, the SEC has an interest in

giving defendants the option to agree to a speech restriction
as part of a broader settlement agreement.

However, to the extent the SEC's letter addressing
NCLA's request to amend Rule 202.5(e) advances the
broader rationale that it is necessary to silence defendants in
order to promote public confidence in the SEC's work, this
rationale would be improper. "'[W]hatever differences may
exist about interpretations of the First Amendment, there is
practically universal agreement' that it was adopted in part
to 'protect the free discussion of governmental affairs.'"
*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478
(2022) (quoting *Mills v. Alabama*, 384 U.S. 214, 218
(1966)). A defendant who denies the SEC's allegations may
well undermine confidence in the SEC's enforcement
programs. But undermining confidence in the government
is an inevitable result of our robust First Amendment
protections for speech critical of the government. The SEC's
valid interest in Rule 202.5(e) is thus more mechanical: that
if a defendant wants to deny the allegations, the SEC wants
to be able to prove those allegations in a particular forum,
i.e., in court, with the benefits and protections of the judicial
process.

At the same time, the SEC's interests are not so
compelling that they would justify a broad restriction on
speech, either. In this case, and critical to our *Rumery*
analysis, is the fact that, on its face, SEC Rule 202.5(e) "is a
relatively narrow limitation" on defendants' speech.
*Leonard*, 12 F.3d at 891. By its terms, Rule 202.5(e) creates
consequences for defendants only when they publicly deny
the SEC's allegations. The Rule on its face sweeps no
further than speech denying the allegations. And, critically,
the consequence for violating the Rule is not speech
suppression or the automatic undoing of the settlement

（27 of 310）Page 27 8993 08/06/2025, DktEntry: 78.1, Page 27 of 31

agreement, but only that the SEC may seek to reopen the
civil enforcement proceedings—which would in turn require
a court to agree to that request, including over and above any
First Amendment objections that the defendant could
interpose at that time. *See Rumery*, 480 U.S. at 401
(O'Connor, J., concurring in part and concurring in the
judgment) (noting that "judicial supervision" creates "an
important check against abuse" of voluntary agreements to
waive rights). "Even in those areas affected by" Rule
202.5(e), defendants can later decide to deny the allegations
against them "if [they] feel[] that the benefits to be gained
. . . are more valuable than the [settlement] foregone," or,
that is, potentially foregone, because a court must still agree
to the SEC's request to reopen. *Leonard*, 12 F.3d at 892.

Although the SEC's asserted interest in Rule 202.5(e) is
limited, the face of the Rule only imposes a limited speech
restriction. And the remedy for a violation of Rule 202.5(e)
is also limited, requiring court sign-off that, if granted,
merely puts the parties back in the position they were in
before the settlement. The result is that a defendant who
agrees to a Rule 202.5(e) settlement faces the prospect of
reopened proceedings, but he may conclude that agreeing to
the SEC's allegations or litigating instead of settling are
inferior options. We do not think the First Amendment
forecloses the SEC from giving defendants the optionality
reflected in Rule 202.5(e). On this basis, we narrowly reject
petitioners' facial-type challenge.

We caution, however, that further restrictions on
defendants' speech would require a different analysis under
*Rumery*. The SEC assures us in its briefing that
"[d]efendants who enter into settlements with the
Commission remain free to speak about the Commission,
enforcement actions, and a host of other topics so long as

they do not publicly deny the Commission's allegations."
Defendants who have settled with the SEC should therefore
understand that they have full latitude in this regard,
including when it comes to criticizing the SEC. At the same
time, we question how easy the SEC's line will be to police
in practice, should the SEC ever seek to enforce Rule
202.5(e). Our decision today resolves only whether an
agreement allowing the SEC to seek to reopen proceedings
upon a defendant's bare denial of allegations violates the
First Amendment. And on that understanding of Rule
202.5(e), the Rule is not unconstitutionally vague, either.
*See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253
(2012) (explaining that laws "must give fair notice of
conduct that is forbidden or required"). But any broader rule
would present different issues.

In this regard, we note evidence in the record of
settlement agreements that could be read to sweep more
broadly than Rule 202.5(e) itself. For example, we are
informed that defendants agree not to make "any public
statement denying, *directly or indirectly*, any allegation in
the complaint or *creating the impression* that the complaint
is without factual basis." (Emphasis added). Defendants also
agree not to "permit" such statements to be made, an
obligation that could be understood to extend to the speech
of others.

No specific settlement agreement is before us in this
petition for review. But insofar as the SEC's settlement
agreements impose greater obligations than the face of Rule
202.5(e) itself, today's decision—which concerns the denial
of a petition to amend Rule 202.5(e) itself—does not resolve
whether such a settlement agreement could survive a *Rumery*
or vagueness challenge. Courts considering such
settlements may take up these questions in appropriate cases,

whether when entering consent judgments or entertaining
requests for relief from them. If defendants raise such
challenges, courts should carefully consider them, mindful
of the important values associated with permitting criticism
of the government. Nor do we decide if it would be
constitutional for the facial restrictions in Rule 202.5(e) to
apply in perpetuity. It stands to reason that under a *Rumery*
analysis, the government's interest may wane as time passes.
Issues such as this will need to be addressed in individual
cases.

For these reasons, we uphold Rule 202.5(e) against the
instant facial-type First Amendment challenge, without
prejudice to future challenges on more particularized
records.

IV

We lastly consider petitioners' contention that the SEC's
adoption of Rule 202.5(e) violates the APA. An agency's
denial of a petition to amend a rule may be vacated if it is
"arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law." 5 U.S.C. § 706(2)(A);
*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92
F.3d 940, 942 (9th Cir. 1996). Petitioners raise three
arguments on this score. Each is unpersuasive.

*First*, we reject petitioners' argument that the SEC
lacked statutory authority to enact Rule 202.5(e). Petitioners
claim that the SEC's initial claimed sources of authority—
"section 19 of the Securities Act of 1933, section 23(a) of
the Securities Exchange Act of 1934, section 20 of the [now-
repealed] Public Utility Holding Company Act of 1935,
section 38 of the Investment Company Act of 1940 and
section 211 of the Investment Adviser's Act of 1940," 37
Fed. Reg. 25,224 (Nov. 29, 1972)—only empower the

agency to make internal housekeeping rules. According to petitioners, these statutes provide no authority for a rule that binds third parties that come before the agency.

But there is no dispute that the SEC has "discretionary authority to settle on a particular set of terms" with defendants, *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 295 (2d Cir. 2014), and the Commission could have informed each defendant individually about the settlement terms the agency would be willing to accept. Petitioners do not cite any authority suggesting that the SEC cannot publicly announce its policy more formally, and, in fact, petitioners' request to the SEC was premised on the idea that the SEC can have rules regarding settlements, with petitioners urging the SEC to amend its rule.

In addition, when denying the petition, the SEC explained that Rule 202.5(e) "implements and aids in the execution of the Commission's enforcement powers under [15 U.S.C. § 78u] and other enforcement-related provisions." In other words, the SEC premises its ability to request certain terms of settlement on its powers to enforce the securities laws through enforcement actions. We understand the SEC's latest explanation of the basis for the Rule as simply a further elaboration of its original grounds from 1972. And the SEC's enforcement powers provide sufficient authority for the Rule. *See* 15 U.S.C. § 78w(a) (authorizing the SEC "to make such rules and regulations as may be necessary or appropriate . . . for the execution of the functions vested in them" under the Securities Exchange Act of 1934).

*Second*, petitioners argue that Rule 202.5(e) fails because it was not adopted through notice-and-comment rulemaking. But under the APA, notice-and-comment

rulemaking is not required for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Rule 202.5(e) simply announces the Commission's settlement policy, and it is only enforced if a defendant signs a consent agreement that contains a no-deny provision. The Rule is best viewed as one of policy, procedure, or practice, which is exempt from the notice-and-comment requirements.

*Finally*, petitioners argue that the SEC failed to provide a rational explanation for its determination not to amend Rule 202.5(e). But judicial review of an agency's "refus[al] to exercise its discretion to promulgate proposed regulations" is "'extremely limited' and 'highly deferential.'" *Compassion Over Killing v. FDA*, 849 F.3d 849, 854 (9th Cir. 2017) (quoting *Massachusetts*, 549 U.S. at 527–28). In this case, the SEC's explanation for not amending its Rule survives our deferential review. Although petitioners disagree with it, the SEC's six-page letter adequately explains the SEC's reasoning.

\* \* \*

For the foregoing reasons, the petition for review is

**DENIED.**