No. 24-1899

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THOMAS JOSEPH POWELL; BARRY D. ROMERIL;
CHRISTOPHER A. NOVINGER; RAYMOND J. LUCIA;
MARGUERITE CASSANDRA TOROIAN; GARY PRYOR; JOSEPH COLLINS;
REX SCATES;, MICHELLE SILVERSTEIN; REASON FOUNDATION;
CAPE GAZETTE; NEW CIVIL LIBERTIES ALLIANCE,

*Petitioners,*

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Petition for Review from the United States
Securities Exchange Commission, No. 4-733

## BRIEF OF *AMICUS CURIAE*
## FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
## IN SUPPORT OF PETITIONERS' PETITION FOR
## REHEARING AND/OR REHEARING *EN BANC*

RONALD G. LONDON
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

EUGENE VOLOKH
  *Counsel of Record*
SCHAERR | JAFFE LLP
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 206-3926
evolokh@schaerr-jaffe.com

AARON GORDON
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
agordon@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF INTEREST ................................................................1

INTRODUCTION.................................................................................2

ARGUMENT ........................................................................................3

    I.    The SEC's gag policy violates the First Amendment. ...............3

        A.    The SEC's gags are not "voluntary" waivers. ....................4

        B.    The panel overlooked basic First Amendment principles....................................................................................7

                1.    The panel misapplied precedent on which it primarily relied............................................................9

                2.    The panel erred in holding the SEC gag policy involves voluntary waivers.....................................12

        C.    The SEC's gag policy cannot survive strict scrutiny. ......16

    II.    The SEC's gag policy is an unconstitutional prior restraint. ....................................................................................19

CONCLUSION ..................................................................................22

CERTIFICATE OF COMPLIANCE........................................................23

CERTIFICATE OF SERVICE................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Alexander v. United States*,
509 U.S. 544 (1993) ................................................................ 19, 20

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ......................................................................... 5

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ................................................................. 3, 4, 21

*Bd. of Cnty. Comm'rs v. Umbehr*,
518 U.S. 668 (1996) ..................................................................... 3, 15

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) ......................................................................... 7

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ........................................................... 3

*Davies v. Grossmont Union High Sch. Dist.*,
930 F.2d 1390 (9th Cir. 1991) .......................................... 7, 8, 10, 11

*Dolan v. City of Tigard*,
512 U.S. 374 (1994) ......................................................................... 9

*Hudgens v. NLRB*,
424 U.S. 507 (1976) ......................................................................... 8

*Interstate Circuit, Inc. v. City of Dallas*,
390 U.S. 676 (1968) ....................................................................... 21

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) ..................................................................... 4, 6

*NRA v. Vullo*,
602 U.S. 175 (2024) ......................................................................... 6

*Paragould Cablevision, Inc. v. City of Paragould*,
739 F. Supp. 1314 (E.D. Ark. 1990) ............................................... 15

*Paragould Cablevision, Inc. v. City of Paragould*,
    930 F.2d 1310 (8th Cir. 1991) ............................................................ 15

*Powell v. SEC*,
    149 F.4th 1029 (9th Cir. 2025)........................ 2, 3, 6, 7, 9, 10, 17, 18, 20

*Price v. U.S. Dep't of Just. Att'y Off.*,
    865 F.3d 676 (D.C. Cir. 2017)................................................................9

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .............................................................................17

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) .............................................................................19

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) .......................................................................19, 21

*SEC v. Novinger*,
    40 F.4th 297 (5th Cir. 2022)............................................................5, 20

*SEC v. Romeril*,
    15 F.4th 166 (2d Cir. 2021) ...........................................................15, 20

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) .............................................................................18

*Sherbert v. Verner*,
    374 U.S. 398 (1963) ...............................................................................6

*Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) ...............................................................................4

*Siris v. SEC*,
    773 F.3d 89 (D.C. Cir. 2014) ..............................................................20

*Snepp v. United States*,
    444 U.S. 507 (1980) .............................................................................16

*Thana v. Board of License Comm'rs for Charles Cnty.*,
    130 A.3d 1103 (Md. App. 2016).............................................................8

*Town of Newton v. Rumery*,
    480 U.S. 386 (1987) .................................................................9, 10, 11

*United States v. ITT Cont'l Baking Co.*,
  420 U.S. 223 (1975) ............................................................... 11

*United States v. Richards*,
  385 F. App'x 691 (9th Cir. 2010) ........................................... 9

*United States v. Ruppel*,
  666 F.2d 261 (5th Cir. 1982) ................................................. 9

*United States v. Scott*,
  450 F.3d 863 (9th Cir. 2006) ................................................. 8

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ........................................... 3, 4

**Constitutional Provision**

U.S. Const. amend. I ............................................................... 3

**Regulation**

17 C.F.R. § 202.5 ...................................................................... 2

**Treatise**

Smolla & Nimmer on Freedom of Speech
  (Oct. 2025 update) ................................................. 19, 20, 21

**Other Authorities**

Compl.,
  *Paragould Cablevision, Inc. v. City of Paragould*,
  739 F. Supp. 1314 (E.D. Ark. 1990) (No. 3:90-cv-00014-GTE) ............ 15

Aaron Gordon,
  *Imposing Silence Through Settlement:*
  *A First-Amendment Case Study of the*
  *New York Attorney General*,
  84 Alb. L. Rev. 335 (2021) ............................. 8, 11, 15, 18, 19

Roberta S. Karmel,
  *Creating Law at the Securities and Exchange*
  *Commission: The Lawyer as Prosecutor*,
  61 L. & Contemp. Probs. 33 (1998) ....................................... 5

Mem. in Opp. to Mot. for Relief from J.,
    *SEC v. Allaire*, No. 1:03-cv-4087-DLC, 2019 WL 6114484
    (S.D.N.Y. Nov. 18, 2019), ECF No. 31 ......................................... 17, 18

Rodney A. Smolla,
    *Why the SEC Gag Rule Silencing Those Who Settle*
    *SEC Investigations Violates the First Amendment*,
    29 Widener L. Rev. 1 (2023) .................................................................. 4

Andrew N. Vollmer,
    *Four Ways to Improve SEC Enforcement*,
    43 Sec. Reg. L. J. 333 (2015) ............................................................... 5

## STATEMENT OF INTEREST[1]

The Foundation for Individual Rights in Education (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended freedom of expression without regard to speakers' views, through public advocacy, strategic litigation, and *amicus curiae* filings. From decades of experience combating censorship, FIRE is familiar with the constitutional, pedagogical, and societal problems presented by silencing minority or dissenting viewpoints. FIRE strongly opposes attempts to restrict access to information. The panel's decision is concerning to FIRE given its experience with state actors trying to insert speech-suppressing terms in settlement agreements. FIRE accordingly joins Petitioners in seeking rehearing given the panel's misapplication of constitutional principles.

---

[1] All parties consent to the filing of this brief. No counsel for a party authored this brief in whole or in part. No person other than FIRE, its members, or its counsel contributed money intended to fund this brief's preparation or submission.

## INTRODUCTION

The Securities and Exchange Commission (SEC) has since 1972 applied 17 C.F.R. § 202.5(e) to require anyone settling SEC enforcement action to submit to a consent-decree provision barring defendant from taking

> any action or mak[ing] or permit[ting] to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the [SEC's] complaint [against the defendant] is without factual basis.

*See Powell v. SEC*, 149 F.4th 1029, 1045 (9th Cir. 2025). However, the First Amendment prohibits the SEC from railroading settling parties into forever abandoning the right to publicly doubt the Commission's allegations against them. Incorporation of these gag clauses into self-styled "consent" orders cannot obscure their coercive nature. The SEC threatens to proceed with enforcement unless defendants surrender their freedom to criticize the charges. Indeed, the SEC is imposing *prior* restraints on speech—an especially pernicious form of censorship.

The SEC therefore abused its discretion in denying the petition to amend Section 202.5(e) so as to remove the Rule's unconstitutional elements. For that reason, rehearing is warranted.

2

# ARGUMENT

The SEC's gag policy is unconstitutional because of its patent use of government power to suppress expression. The panel parroted the SEC's characterization of its gag clauses as "voluntar[y]" waivers of rights. *See Powell*, 149 F.4th at 1035. "But in the First Amendment context, courts must 'look through forms to the substance' of government conduct," *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)), and loss of First Amendment rights under the SEC's policy is anything but voluntary.

## I. The SEC's gag policy violates the First Amendment.

The Constitution bars the government from "abridging the freedom of speech." Amend. I. To constitute improper abridgement, "a government act of retaliation" for protected speech "need not be severe [or] of a certain kind." *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003). "Nor does it matter whether an act of retaliation" involves "removal of a benefit or the imposition of a burden." *Id.*

A corollary of this principle is that officials "may not deny a benefit to a person on a basis that infringes his … freedom of speech even if he has no entitlement to that benefit." *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) (cleaned up). This is true "regardless of whether the

3

government ultimately succeeds in pressuring someone into forfeiting a constitutional right[.]" *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013). The upshot is that the First Amendment "bar[s], through the artifice of a plea bargain or settlement agreement, the extraction of … silence." Rodney A. Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 Widener L. Rev. 1, 13 (2023).

## A. The SEC's gags are not "voluntary" waivers.

The SEC abridges freedom of speech when it demands as a condition of settlement that defendants never publicly criticize the Commission's allegations, as such a condition "operate[s] as [a] disincentive[] to speak." *Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991). After all, "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment[.]" *White*, 227 F.3d at 1228 (quoting *Bantam Books*, 372 U.S. at 67). An "investigation by [federal] officials," for example, can unlawfully infringe First Amendment rights, even without the imposition of any "criminal or civil sanctions." *Id.*

That reasoning applies with full force here. The SEC's gag "policy says, 'Hold your tongue …'—or get bankrupted by having to continue litigating with the SEC." *SEC v. Novinger*, 40 F.4th 297, 308 (5th Cir. 2022) (Jones, J., concurring). The SEC refuses to settle enforcement proceedings unless the target submits to a gag provision. Likewise, after settlement, if "a defendant breaches" that provision, the Commission will "restore the action to the active docket." Pet. for Rev., Ex. A at 3.

Experts, including former SEC staff, agree: SEC "enforcement actions against regulated persons and businesses … have serious adverse consequences." Roberta S. Karmel, *Creating Law at the Securities and Exchange Commission: The Lawyer as Prosecutor*, 61 L. & Contemp. Probs. 33, 45 (1998) (former SEC commissioner). The "pressure to settle is over-powering even when the SEC case lacks merit." Andrew N. Vollmer, *Four Ways to Improve SEC Enforcement*, 43 Sec. Reg. L. J. 333, 336 (2015) (SEC's former General Counsel). Given these pressures, it is unsurprising "the vast majority" of SEC enforcement actions settle. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring in judgment). One who surrenders First Amendment rights under such circumstances does not do so "voluntarily."

The panel failed to appreciate this point. It considered it "critical[]" to the gag Rule's validity that "the consequence for violating the Rule is … only that the SEC may seek to reopen the civil enforcement proceedings[.]" *Powell*, 149 F.4th at 1044. But the threat of a costly SEC enforcement proceeding, like any other "threat of adverse government action," cannot "punish or suppress [a defendant]'s speech." *NRA v. Vullo*, 602 U.S. 175, 191 (2024).

The panel also suggested the SEC's gag provisions are somehow less objectionable because they merely threaten to "return things to how they were before the settlement," that is, when an enforcement action was pending. *Powell*, 149 F.4th at 1044. In some sense, *every* condition attached to a governmental benefit is merely a threat "to return things to how they were before" the government offers its Hobson's choice. But "libert[y] of … expression may [not] be infringed by the … placing of conditions upon a benefit," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)— even if that condition is arguably no more than a threat to return to the *status quo ante. See Koontz*, 570 U.S. at 607-08.

6

**B.    The panel overlooked basic First Amendment principles.**

In upholding the SEC's speech-suppressing Rule, the panel held the policy is no more problematic than waivers of rights ubiquitous in criminal plea agreements and other contracts. *Powell*, 149 F.4th at 1038-39. That reasoning rests on false equivalence.

Granted, courts uphold both criminal and civil settlements in which parties waive certain rights in resolving ongoing or impending proceedings. Criminal defendants accepting plea deals for lighter sentences obviously must forfeit certain of the Constitution's procedural guarantees. Although a deal may have "a discouraging effect on the defendant's assertion of his trial rights," that "is an inevitable … attribute of any legitimate system which tolerates … negotiation of pleas." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (cleaned up). Courts similarly uphold government-demanded waivers of constitutional rights as conditions of civil settlement if the waivers are necessary to achieve "a full compromise of the dispute between the parties." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991).

But public officials may not strong-arm settling parties "into relinquishments of constitutional liberty that [are] *not* reasonably

necessary to effectuate settlement of the underlying dispute[s][.]" Aaron Gordon, *Imposing Silence Through Settlement: A First-Amendment Case Study of the New York Attorney General*, 84 Alb. L. Rev. 335, 347 (2021) (citing cases).[2] In *Davies*, for example, this Court invalidated a school district's attempt in a civil settlement to "extract[] a waiver of" a citizen's First Amendment right to run for office, explaining that "the nexus between the individual right waived and the dispute" was "not a close one." 930 F.2d at 1399. That was because, "[h]ad it not been for the District's insistence on the inclusion of the waiver," the "right to run for elective office could not have been affected by a resolution of the [settled] litigation." *Id.*; *see also Thana v. Board of License Comm'rs for Charles Cnty.*, 130 A.3d 1103, 1113, 1115 (Md. App. 2016).

Analogous limitations control government-demanded waivers of rights—including First Amendment rights—in the criminal context. *See* Gordon, *supra*, at 347-48 & nn.55-59 (collecting cases); *United States v. Scott*, 450 F.3d 863, 865 n.4, 871 n.7 (9th Cir. 2006). A prosecutor's "set

---

[2] Cases involving speech-suppressing contracts between private parties are irrelevant, since the First Amendment prohibits only governmental abridgement of speech. *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976).

of legitimate interests places boundaries on the rights that can be bargained away in plea negotiations." *Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 681 (D.C. Cir. 2017). Among other limitations, prosecutors cannot use plea bargains to "retaliate[] against specially protected actions by defendants, such as the exercise of first amendment rights." *United States v. Ruppel*, 666 F.2d 261, 267 (5th Cir. 1982) (cleaned up). This Court has accordingly invalidated on First Amendment grounds a plea agreement that barred the defendant from public comments concerning a county commissioner. *See United States v. Richards*, 385 F. App'x 691, 692-93 (9th Cir. 2010). These cases apply to settlements the broader principle that the government "may not require a person to give up a constitutional right … in exchange for a discretionary [government] benefit" that "has little or no relationship to" the right of which the government demands surrender. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). The panel disregarded this principle.

### 1. The panel misapplied precedent on which it primarily relied.

The panel's reliance on *Town of Newton v. Rumery*, 480 U.S. 386 (1987), to justify the purported "waiver[s] of First Amendment rights" that the SEC's gag rule requires was misguided. *See Powell*, 149 F.4th at

1039. In *Rumery*, the Supreme Court upheld an agreement where the criminal defendant, in exchange for the dismissal of charges, waived the right to file a civil rights action related to the charges. Despite acknowledging "in some cases these agreements may infringe" defendants' rights, the Court held "the prosecutor had an independent, legitimate reason" to make the agreement in that case, "directly related to his prosecutorial responsibilities." 480 U.S. at 392, 398. The agreement "foreclosed both the civil and criminal trials concerning [plaintiff], in which [an assault victim] would have been a key witness," sparing her "embarrassment she would have endured if she had had to testify in either of those cases." *Id.*

What *Rumery* requires, then, is "a close nexus—a tight fit—between" the government's "*specific* interest" in demanding waiver of a right as a condition of settlement and "the *specific* right waived." *Davies*, 930 F.2d at 1399 (emphases added). Here, the panel erroneously found "a 'close nexus' between" the SEC's claimed interest in "proving the allegations supporting its enforcement actions—and 'the specific right waived'—the defendant agreeing not to deny those same allegations." *Powell*, 149 F.4th at 1043 (quoting *Davies*, 930 F.2d at 1399). But the

waiver of speech rights that the SEC demands lacks the kind of "direct[]" relationship to legitimate interests as was present in *Rumery*, 480 U.S. at 397. The Commission not only exacts from settling defendants waivers of the right to keep litigating allegations against them, but also requires them to forever surrender the right to *publicly criticize* those allegations. That goes well beyond the SEC's "specific" interest in achieving "a full compromise of the dispute." *See Davies* 930 F.2d at 1399. Contrast that with *Rumery*, where "[b]oth the criminal charges … and Rumery's civil suit against the prosecutor involved the same incident," such that a "full compromise … between the parties necessitated resolving both matters." *Id.* (citing 480 U.S. at 398).

Moreover, "consent decrees are normally compromises in which the parties give up something they might have won in litigation[.]" *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 235 (1975). The First Amendment right that SEC consent decrees "take from settling parties," however, "is not one that they would have lost" had the SEC "successfully pursued enforcement actions against them." Gordon, *supra*, at 350. "[N]or is it a right necessarily surrendered when a matter is resolved out of court (such as the right to an impartial adjudicator)." *Id*. Because the

right to publicly criticize the SEC is "extraneous to [the] civil-settlement process," *id.*, the SEC cannot "extract[] a waiver of" that right "as a condition to settling." *See Davies*, 930 F.2d at 1399.

### 2. The panel erred in holding the SEC gag policy involves voluntary waivers

The caselaw largely undercuts the panel's reasoning in upholding the SEC's gag policy.

Its error is illustrated, first, by a case holding the government could not require a criminal defendant to waive in a plea agreement his right to file Freedom of Information Act requests about the charges against him. Rejecting the government's claim that its "interest in finality" supported the condition, the court held it took "the finality interest too far." *Price*, 865 F.3d at 681-82. Likewise, the SEC's insistence on having the public believe its allegations against settling defendants are well-founded "takes the finality interest too far."

Insofar as the SEC characterizes the "interest" underlying its policy more broadly—not just as settling enforcement actions but as generally reinforcing publicly the soundness of SEC allegations—that is a constitutionally invalid basis for muzzling speech. The First Amendment subjects "police, prosecutors, and judicial processes to extensive public

scrutiny and criticism." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) (cleaned up). Such expression is "of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business," *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975), whether it concerns the legal system generally or a "particular … controversy." *Bridges v. California*, 314 U.S. 252, 277-78 (1941).

Also troubling is that the SEC "*programmatically* demand[s] surrenders of First Amendment rights … pursuant to across-the-board policy," Gordon, *supra*, at 355, under binding regulations that preclude settlements without the gag provision. The Constitution generally bars this kind of "unilateral imposition of a penalty upon" one who "cho[oses] to exercise a legal right," which is "a situation very different from the give-and-take negotiation common in plea bargaining." *Bordenkircher*, 434 U.S. at 362-63 (cleaned up); *cf. Fuentes v. Shevin*, 407 U.S. 67, 95 (1972). For instance, the Supreme Court invalidated a statute under which only criminal defendants who pleaded not guilty or demanded jury trials were eligible for the death penalty. Although similar conditions might have been imposed through plea bargaining, their imposition via

13

statute "needlessly chill[ed] the exercise of basic constitutional rights." *United States v. Jackson*, 390 U.S. 570, 582 (1968).

The caselaw the panel cited upholding waivers of rights is plainly distinguishable. *See Powell*, 149 F.4th at 1039-42. It cited, for example, *Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993), which held a public-sector union validly waived its speech rights in a collective bargaining agreement that provided that if the union successfully for state legislation that increased the city's payroll burden, any additional costs were chargeable against the salary agreement with the union. But that provision, unlike the SEC's gags, was proposed *by the union*, not imposed by the city. *Id.* at 890. Moreover, there was a "close nexus" between the right the union surrendered and the benefit received: it would bear the cost of any legislation for which it lobbied that affected other terms of its agreement with the city. *Id.* at 892 n.10.

*Leonard* is thus unlike this case and more like others the panel cited, involving simple waivers of litigation rights that satisfied the "close-nexus" standard. *See Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1097 (3d Cir. 1988); *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke County*, 149 F.3d 277, 282 (4th Cir. 1998). Also, the county in *Lake*

*James* faced looser First Amendment constraints because it obtained the waiver in its capacity as contractor rather than enforcer or regulator, *id.* (citing *Umbehr*, 518 U.S. at 675-78), which the SEC cannot claim here.[3]

The panel also relied on an out-of-circuit decision that summarily rejected a First Amendment challenge to a SEC gag provision by holding the defendant "waived" his speech rights. *SEC v. Romeril*, 15 F.4th 166, 172-73 (2d Cir. 2021). But *Romeril* was poorly reasoned: the court ignored the "close-nexus" requirement and failed to explain how the "waiver" was valid despite being exacted by the threat of SEC retaliation. *See* Gordon, *supra*, at 358-60. *Romeril* also relied on substantially the same lines of precedent cited by the panel here, *see* 15 F.4th at 172-73 & n.4—which cannot justify the SEC's speech-suppressing policy, for reasons already stated. *See also* Gordon, *supra*, at 358-60 (analyzing *Romeril*'s flaws).

---

[3] *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310 (8th Cir. 1991), another case the panel cited as upholding waiver of rights, is inapposite because: (1) the plaintiff did not plead, and the court did not address, any unconstitutional-conditions argument, *see id.* at 1314-15; Compl. ¶¶34-40, *Paragould,* 739 F. Supp. 1314 (E.D. Ark. 1990) (No. 3:90-cv-00014-GTE), https://tinyurl.com/yhpd7buf (App'x to Br.); (2) the city acted as contractor, not a regulator; and (3) the facts reveal a close nexus between the allegedly speech-suppressing contract provision and the city's interest. *See* 739 F. Supp. at 1321-22.

Finally, the panel cited *Snepp v. United States*, 444 U.S. 507 (1980), which upheld terms in a CIA agent's employment contract that barred him after leaving the agency from publishing writings that discussed its activities, unless he allowed the CIA to pre-screen them. But in *Snepp*, the Court explained that "even in the absence of an express agreement[,] the CIA could have … impos[ed] [those] restrictions" to safeguard "the secrecy of information important to our national security[.]" *Id.* at 510 n.3. No such interests arise when defendants settling with the SEC merely *opine* on allegations against them.

## C. The SEC's gag policy cannot survive strict scrutiny.

Because the panel incorrectly held the SEC's gag clauses are voluntary waivers of First Amendment rights, it did not analyze whether the Rule satisfies applicable standards of review for speech *restrictions*, which it cannot.

The gag clauses bar defendants from publicly denying SEC allegations—but not from *confirming* them. This is a viewpoint-based restriction on speech, which is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to

serve compelling [government] interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

What possible compelling interest could the gags serve? In prior litigation, the SEC warned that allowing settling parties to criticize it could "creat[e] an unfair impression" of the Commission's practices. Mem. in Opp. to Mot. for Relief from J. at 20, *SEC v. Allaire*, No. 1:03-cv-4087-DLC, 2019 WL 6114484 (S.D.N.Y. Nov. 18, 2019), ECF No. 31 ("*Allaire* Opp."). It is hard to think of a less "compelling" interest, as "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free." *Landmark Commc'ns*, 435 U.S. at 841-42 (cleaned up). "[P]ublic scrutiny and discussion of governmental affairs" is precisely what "the First Amendment was adopted to protect." *Id.* at 839.

The panel correctly deemed any claimed SEC interest in "silenc[ing] defendants in order to promote public confidence in the SEC's work" to be "improper." *Powell*, 149 F.4th at 1044. But the panel nonetheless *implicitly* accepted that rationale in holding the SEC's interest in resolving cases justified suppression of subsequent public discussion of the underlying allegations. *See id.* at 1043. Any such claimed "interest" is merely a demand for insulation from public criticism.

The panel further erred in upholding the SEC's speech-suppressing policy as not "facially" unconstitutional because, the panel said, Petitioners did not challenge it as applied to a particular case. *Id.* at 1037. Not only does this ignore Petitioners' as-applied challenges, *see* Pet. for Reh'g at 11, but the panel gets the law wrong. The policy is facially unconstitutional "not simply [because] it includes within its sweep some impermissible applications, but that in all its applications it operates on a fundamentally mistaken premise": that the Commission may stifle criticism to protect its reputation. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 966 (1984).

Finally, the SEC has previously suggested its speech-suppressing provisions are justifiable under caselaw upholding gag orders on participants in ongoing proceedings. *See Allaire* Opp. at 18-19. The Commission apparently has not so argued here, but even if it had, that argument would fail. *See* Gordon, *supra*, at 377 (explaining why this theory cannot sustain gag clauses).

## II.   The SEC's gag policy is an unconstitutional prior restraint.

The SEC's gag clauses are also unconstitutional because they are not just restraints, but *prior* restraints, on protected speech, *see* Gordon, *supra*, at 364-69, against which the presumption of invalidity "is heavier … than that against limits on expression" enforced through subsequent penalty. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975). The SEC memorializes settlements in judicial or administrative consent decrees, *see* Pet. for Rev., Ex. A at 3, which (unlike ordinary settlement contracts) have the same effect as other judgments. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). Gags imposed by adjudicatory order are "classic" prior restraints, *see Alexander v. United States*, 509 U.S. 544, 550 (1993), as those who violate them cannot challenge their validity in a subsequent proceeding—a principle known as the collateral-bar rule. *See* 2 Smolla & Nimmer on Freedom of Speech § 15:72 (Oct. 2025 update). The SEC's speech-suppressing clauses are prior restraints even if the penalty for violation is reopened proceedings; a restriction "need not effect total suppression in order to create a prior restraint." *Se. Promotions*, 420 U.S. at 557 n.8.

Yet the panel assumed away the collateral-bar rule. According to the panel, were the SEC to "seek to reopen the civil enforcement proceedings" based on a gag-clause violation, a court would address any First Amendment issue at that time, or when entertaining a request for relief from a consent judgment. *Powell*, 149 F.4th at 1044-45. But that ignores how courts have held First Amendment objections are insufficient grounds for relief from a consent judgment in an SEC action. *See Novinger*, 40 F.4th at 307; *Romeril*, 15 F.4th at 172. Nor may parties to a consent decree defensively challenge its validity in subsequent proceedings to enforce that judgment. *See Siris v. SEC*, 773 F.3d 89, 96 (D.C. Cir. 2014). The panel's assurance that settlors may someday assert "as-applied" challenges to SEC settlements accordingly rings hollow.

Regardless, the SEC's gag clauses would be prior restraints even if not governed by the collateral-bar rule. The Supreme Court has "given a broader definition to the term 'prior restraint' than was given to it in English common law." *Alexander*, 509 U.S. at 553. It now includes most "orders or administrative rules that operate to forbid expression before it takes place." 2 Smolla & Nimmer, *supra* § 15:1. In *Interstate Circuit, Inc. v. City of Dallas*, for example, the Court held an administrative board's

power to classify films as "not suitable for young persons" so as to require special exhibition licenses was an unconstitutional prior restraint, 390 U.S. 676, 681-82 (1968), even though those classifications received *de novo* judicial review after the fact. *Id.* at 685. *See also Bantam Books*, 372 U.S. at 70.

The SEC's policy ultimately cannot survive the exacting standard of First Amendment review for prior restraints. A prior-restraint system must have procedural "safeguards … against the suppression of … constitutionally protected[] matter," including "an almost immediate judicial determination of … validity[.]" *Bantam Books*, 372 U.S. at 70. The SEC's policy, far from ensuring prompt judicial review every time a settlor's speech is suppressed, gags the settlor *for life*. Prior restraints are also subject to a substantive requirement: They are potentially permissible "only [in] narrow … situations," such as "obscenity, … imminent threats to national security, or as a last resort to protect a defendant's right to a fair trial[.]" 2 Smolla & Nimmer, *supra* § 15:7. Yet the speech that the SEC stifles does not "fit within" any of these "narrowly defined" categories. *See Se. Promotions*, 420 U.S. at 559.

## CONCLUSION

The SEC's policy of muzzling settling targets in enforcement actions rests on extortionate demands, not voluntary waivers. The SEC, via unilaterally imposed settlement provisions, unconstitutionally exacts the surrender of the First Amendment rights. The panel erred in allowing the Commission's practice to continue, and rehearing is warranted.

Dated: October 2, 2025

RONALD G. LONDON
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Avenue SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

/s/ *Eugene Volokh*

EUGENE VOLOKH
  *Counsel of Record*
SCHAERR | JAFFE LLP
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 206-3926
evolokh@schaerr-jaffe.com

AARON GORDON
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
agordon@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 29(b) and 9th Circuit Rule 29-2(c)(2) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 4,199 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: October 2, 2025

*/s/ Eugene Volokh*
Eugene Volokh

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 2, 2025, an electronic copy of the Brief of *Amicus Curiae* of Foundation for Individual Rights and Expression was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system. The undersigned also certifies all parties in this case are represented by counsel who are registered ACMS users and that service of the brief will be accomplished by the ACMS system.

Dated: October 2, 2025

/s/ *Eugene Volokh*

Eugene Volokh

*Counsel for Amicus Curiae*