No. 24-1899

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THOMAS JOSEPH POWELL; BARRY D. ROMERIL; CHRISTOPHER A. NOVINGER;
RAYMOND J. LUCIA; MARGUERITE CASSANDRA TOROIAN; GARY PRYOR;
JOSEPH COLLINS; REX SCATES; MICHELLE SILVERSTEIN;
REASON FOUNDATION; CAPE GAZETTE; NEW CIVIL LIBERTIES ALLIANCE,

*Petitioners*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Petition for Review from the United States
Securities Exchange Commission, No. 4-733

## BRIEF OF FREEDOM OF THE PRESS FOUNDATION
## AS *AMICUS CURIAE* IN SUPPORT OF PETITIONERS'
## PETITION FOR REHEARING AND/OR REHEARING *EN BANC*

Aaron Gordon
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
agordon@schaerr-jaffe.com

Donald M. Falk
 *Counsel of Record*
SCHAERR | JAFFE LLP
One Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Freedom of the Press Foundation (FPF) states that it is a non-profit, tax-exempt organization incorporated in California. Freedom of the Press Foundation has no parent corporation, and no publicly held corporation has 10% or greater ownership in FPF.

*/s/ Donald M. Falk*
Donald M. Falk

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF INTEREST AND SOURCE OF AUTHORITY
    TO FILE ........................................................................................... 1

INTRODUCTION ............................................................................... 2

ARGUMENT ...................................................................................... 3

  I.    The SEC's speech-suppressant settlement clauses are not
      "voluntary." ............................................................................. 3

  II.   The SEC's speech-suppressant Rule is contrary to the
      public interest. ......................................................................... 8

  III.  The SEC's speech-suppressant Rule violates the First
      Amendment's guarantee of press freedom and the right to
      hear speech. ........................................................................... 18

CONCLUSION ................................................................................. 22

CERTIFICATE OF COMPLIANCE .................................................... 24

CERTIFICATE OF SERVICE ............................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Albuquerque J. v. Jewell,*
    17 P.3d 437 (N.M. 2001) ........................................................ 19

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023) ................................................................ 5

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) .................................................................. 4

*Bridges v. California,*
    314 U.S. 252 (1941) ................................................................ 7

*Butterworth v. Smith,*
    494 U.S. 624 (1990) .............................................................. 21

*Cain v. Darby Borough,*
    7 F.3d 377 (3d Cir. 1993) ....................................................... 9

*CBS Inc. v. Young,*
    522 F.2d 234 (6th Cir. 1975) ........................................... 19, 21

*Daily Herald Co. v. Munro,*
    838 F.2d 380 (9th Cir. 1988) ............................................... 18

*Davies v. Grossmont Union High Sch. Dist.,*
    930 F.2d 1390 (9th Cir. 1991) ............................................... 6

*Davis v. E. Baton Rouge Par. Sch. Bd.,*
    78 F.3d 920 (5th Cir. 1996) ............................................. 19, 21

*First Nat'l Bank of Bos. v. Bellotti,*
    435 U.S. 765 (1978) .............................................................. 11

*Gentile v. State Bar of Nev.,*
    501 U.S. 1030 (1991) ....................................................... 20, 21

*Hunter v. Va. State Bar ex rel. 3d Dist. Comm.,*
    744 S.E.2d 611 (Va. 2013) ................................................... 21

*Jessup v. Luther,*
    277 F.3d 926 (7th Cir. 2002) ............................................... 14

*Landmark Commc'ns, Inc. v. Virginia,*
  435 U.S. 829 (1978) ................................................................7

*Lynch v. City of Alhambra,*
  880 F.2d 1122 (9th Cir. 1989) ...........................................8, 9

*Marcus v. St. Tammany Par. Sch. Bd.,*
  No. 95-CV-3140, 1997 WL 313418 (E.D. La. June 9, 1997) ...............21

*Mills v. Alabama,*
  384 U.S. 214 (1966) ...............................................................13

*Nebraska Press Ass'n v. Stuart,*
  427 U.S. 539 (1976) ...............................................................20

*Overbey v. Mayor of Baltimore,*
  930 F.3d 215 (2019) ...........................................................15, 19

*Pansy v. Borough of Stroudsburg,*
  23 F.3d 772 (3d Cir. 1994) ......................................................15

*Pickering v. Bd. of Educ.,*
  391 U.S. 563 (1968) ...............................................................13

*Powell v. SEC,*
  149 F.4th 1029 (9th Cir. 2025) .................................2, 3, 5, 9, 10, 11, 16

*Red Lion Broad. Co. v. FCC,*
  395 U.S. 367 (1969) .................................................................3

*Ronnie Van Zant, Inc. v. Cleopatra Records, Inc.,*
  906 F.3d 253 (2d Cir. 2018) ....................................................14

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.,*
  547 U.S. 47 (2006) ...................................................................4

*SEC v. Bhardwaj,*
  No. 1:22-CV-06277, 2024 WL 80104 (S.D.N.Y. Jan. 8, 2024).............14

*SEC v. Musk,*
  No. 18-CV-8865, 2022 WL 1239252 (S.D.N.Y. Apr. 27, 2022)............12

*SEC v. Novinger,*
  40 F.4th 297 (5th Cir. 2022).....................................................10

iv

*SEC v. Romeril*,
  15 F.4th 166 (2d Cir. 2021) ................................................. 10

*SEC v. Vitesse Semiconductor Corp.*,
  771 F. Supp. 2d 304 (S.D.N.Y. 2011) ................................. 17

*Siris v. SEC*,
  773 F.3d 89 (D.C. Cir. 2014) ............................................... 10

*Town of Newton v. Rumery*,
  480 U.S. 386 (1987) ........................................................ 6, 8

*United States v. Alvarez*,
  567 U.S. 709 (2012) ............................................................ 16

*United States v. Jose*,
  131 F.3d 1325 (9th Cir. 1997) ............................................ 19

*United States v. Wecht*,
  484 F.3d 194 (3d Cir. 2007) .......................................... 18, 19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer
  Council, Inc.*, 425 U.S. 748 (1976) ................................... 18

*WXIA-TV v. State*,
  811 S.E.2d 378 (Ga. 2018) ................................................. 20

**Statute**

15 U.S.C. §45b ..................................................................... 13

**Regulation**

17 C.F.R. §202.5 ................................................................. 2, 3

**Rule**

Fed. R. App. P. 40 ......................................................... 8, 10, 19

**Treatises**

Marc I. Steinberg & Ralph C. Ferrara,
  Securities Practice: Federal and State Enforcement
  (Aug. 2025 update) ........................................................... 2, 5

Smolla & Nimmer on Freedom of Speech
  (Oct. 2025 update) ............................................................ 20

**Other Authorities**

Aaron Gordon,
  *Imposing Silence Through Settlement: A First-Amendment*
  *Case Study of the New York Attorney General*,
  84 Alb. L. Rev. 335 (2021) ............................................ 7, 14, 17, 21, 22

Danné L. Johnson,
  *SEC Settlement: Agency Self-Interest or Public Interest*,
  12 Fordham J. Corp. & Fin. L. 627 (2007) ............................................. 5

Mem. in Opp. to Mot. for Relief from J.,
  *SEC v. Allaire*, No. 1:03-cv-4087-DLC (S.D.N.Y. June 18, 2019) ....... 20

Hester M. Peirce,
  Remarks at the 50th Annual Rocky Mountain Securities
  Conference: The Why Behind the No (May 11, 2018) ........................... 4

Robert Reich,
  *Smoking, Guns*, Am. Prospect (Dec. 19, 2001) ................................... 12

Sec. & Exch. Comm'n,
  *Addendum to Division of Enforcement Press Release—*
  *Fiscal Year 2024* ................................................................................ 5, 11

Rodney A. Smolla,
  *Why the SEC Gag Rule Silencing Those Who Settle*
  *SEC Investigations Violates the First Amendment*,
  29 Widener L. Rev. 1 (2023) ............................................................ 3, 16

U.S. Sec. & Exch. Comm'n, Div. of Enf't,
  2020 Annual Report (Nov. 2, 2020) ...................................................... 11

Andrew N. Vollmer,
  *Four Ways to Improve SEC Enforcement*,
  43 Sec. Reg. L. J. 333 (2015) .............................................................. 12

Mary Jo White,
  *Deploying the Full Enforcement Arsenal*,
  Council of Institutional Invs. (Sept. 26, 2013) .................................... 13

## STATEMENT OF INTEREST AND
## SOURCE OF AUTHORITY TO FILE

The Freedom of the Press Foundation (FPF) is a nonprofit organization that protects, defends, and empowers public-interest journalism. The organization works to preserve and strengthen First and Fourth Amendment rights guaranteed to the press through a variety of avenues, including the development of technological tools, documentation of attacks on the press, training newsrooms on digital security practices, and advocating for the public's right to know. FPF is interested in this case because opposing prior restraints and protecting journalists' right to speak freely with willing sources are central to its mission. The panel's erroneous holding in this case departed from core constitutional principles, and FPF accordingly joins Petitioners in seeking rehearing.[1]

---

[1] All parties consent to the filing of this brief. No party or counsel for a party authored this brief in whole or in part. No person or entity other than FPF, its members, or its counsel in this matter has made any monetary contributions intended to fund the preparation or submission of this brief.

## INTRODUCTION

Since 1972, the Securities and Exchange Commission (SEC), pursuant to 17 C.F.R. §202.5(e), has insisted that the targets of SEC enforcement action who settle with the Commission submit to a consent-decree provision stating that the defendant will not take "any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the [SEC's] complaint [against the defendant] is without factual basis." *See Powell v. SEC*, 149 F.4th 1029, 1045 (9th Cir. 2025).

This demand by the SEC violates the First Amendment: not only are settling parties strong-armed, by the threat of adverse government action, into forever giving up the right to publicly cast doubt on the Commission's allegations against them, but the press and the public are deprived of key insights from those parties about how the Commission exercises its vast authority. "As the agency charged with enforcing the federal securities laws, the SEC is vested with sweeping investigatory and prosecutorial powers." 25 Marc I. Steinberg & Ralph C. Ferrara, Securities Practice: Federal and State Enforcement §9:16 (Aug. 2025 update). The potential for abuse of this authority underscores the need

for open discourse regarding SEC allegations. The First Amendment, after all, protects not only the right to speak but also "the right of the public to receive … ideas and experiences." *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969). FPF therefore agrees with Petitioners that the SEC abused its discretion in denying their rulemaking petition to amend 17 C.F.R. §202.5(e).

## ARGUMENT

The SEC's gag policy unconstitutionally uses government power to suppress the protected speech of settling defendants, and the resulting "consent" judgments violate the rights of the press and the public to hear from those most familiar with the SEC's activities.

## I. The SEC's speech-suppressant settlement clauses are not "voluntary."

The panel inaccurately characterizes the Commission's gag clauses as "voluntar[y]" waivers of rights by settling defendants. *Powell*, 149 F.4th at 1035. The First Amendment "bar[s], through the artifice of a plea bargain or settlement agreement, the extraction of … silence." Rodney A. Smolla, *Why the SEC Gag Rule Silencing Those Who Settle SEC Investigations Violates the First Amendment*, 29 Widener L. Rev. 1, 13 (2023). "[T]he government may not deny a benefit," including an offer of

settlement, "to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 59 (2006) (cleaned up). Furthermore, even "informal sanctions," including "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," can violate the First Amendment when deployed based on the target's protected expression. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963).

That is what is happening here. The threat of SEC-initiated litigation is daunting enough to intimidate even the innocent into settlement. Such settlements, a current SEC commissioner explains, are often "negotiated by someone desperate to end an investigation that is disrupting or destroying her life." Hester M. Peirce, Remarks at the 50th Annual Rocky Mountain Securities Conference: The Why Behind the No (May 11, 2018), https://www.sec.gov/news/speech/peirce-why-behind-no-051118. "[T]he SEC is more powerful than most respondents," who "cannot realistically walk away from the settlement" or "modify the terms." Danné L. Johnson, *SEC Settlement: Agency Self-Interest or Public*

*Interest*, 12 Fordham J. Corp. & Fin. L. 627, 661 (2007) (former SEC attorney).

Also pushing accused parties toward settlement are the bleak prospects for those who *do* defend against the SEC's charges. "[T]he SEC is litigating, to an increasing degree, in the administrative proceeding rather than federal court forum." 25 Steinberg & Ferrara, *supra*, §2:2; *accord* Sec. & Exch. Comm'n, *Addendum to Division of Enforcement Press Release—Fiscal Year 2024* at 1, https://www.sec.gov/files/fy24-enforcement-statistics.pdf ("2024 Report") (63.1% of SEC's standalone actions were administrative proceedings). "From 2010 to 2015, the SEC won 90% of its contested in-house proceedings compared to 69% of the cases it brought in federal court." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 215 (2023) (Gorsuch, J., concurring in judgment). Unsurprisingly, "the vast majority" of SEC enforcement actions settle. *Id.* at 216. And given these pressures, it is hard to maintain that settling defendants' surrenders of First-Amendment rights are truly "voluntary."

In holding otherwise, the panel here analyzed the purported "waiver[s] of First Amendment rights" demanded by the SEC according to *Town of Newton v. Rumery*. *Powell*, 149 F.4th at 1042 (citing 480 U.S.

386 (1987)). In *Rumery*, the Supreme Court upheld an agreement in which a criminal defendant, in return for a prosecutor's dismissal of charges, waived the right to file a civil-rights action concerning those charges. The Court, while acknowledging "that in some cases these agreements may infringe" defendants' rights, upheld that particular agreement because "the prosecutor had an independent, legitimate reason to make th[e] agreement directly related to his prosecutorial responsibilities. The agreement foreclosed both the civil and criminal trials concerning [the plaintiff], in which [an assault victim] would have been a key witness. She therefore was spared the … embarrassment she would have endured if she had had to testify in either of those cases." *Rumery,* 480 U.S. at 392, 397-98. *Rumery*'s core holding is that a waiver of rights is valid if it has "a close nexus—a tight fit—between the *specific* interest the government seeks to advance in the dispute underlying the litigation involved and the *specific* right waived." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991) (emphases added).

Here, however, there is no "close nexus": The SEC's "specific" interest in resolving ongoing or impending proceedings is covered by the

6

condition that settling defendants not further litigate the charges against them. The SEC cannot claim that a perpetual surrender of settling defendants' right to publicly criticize the agency is also necessary to achieve a resolution. Where, as here, settling parties "have been strong-armed by government into relinquishments of constitutional liberty that [a]re *not* reasonably necessary to effectuate settlement of the underlying dispute" (whether criminal or civil), most courts "have properly found these 'waivers' invalid." Aaron Gordon, *Imposing Silence Through Settlement: A First-Amendment Case Study of the New York Attorney General*, 84 Alb. L. Rev. 335, 347 (2021) (citing cases).

To the extent the SEC characterizes its interest more broadly—not merely as resolving ongoing or impending proceedings but as generally reinforcing the public's mind the soundness of the SEC's allegations—that interest is invalid *a priori*. The First Amendment subjects "the police, prosecutors, and judicial processes to extensive public scrutiny and criticism," *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) (cleaned up), which can validly reach not only the legal system in general but also a "particular … controversy," *Bridges v. California*, 314 U.S. 252, 277-78 (1941).

7

The panel's departure from the Supreme-Court precedent discussed above, as well as this Court's holding in *Davies*, are factors favoring rehearing this case. *See* Fed. R. App. P. 40(b)(2).

## II. The SEC's speech-suppressant Rule is contrary to the public interest.

The speech-suppressant provisions of SEC settlements are improper, too, for the independent reason that they stifle speech about important public issues. That not only underscores the flaws in the panel decision, but also provides a compelling reason for this Court to grant rehearing: this case presents a "question[] of exceptional importance." Fed. R. App. P. 40(b)(2)(D).

The *Rumery* Court held that even a voluntary waiver of constitutional rights—which, to reiterate, the SEC's gag clauses are not—"is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." 480 U.S. at 392. Given that the SEC's settlements muzzle speech aimed at "deterring [law-enforcement] misconduct," "[i]t is the burden of the" SEC to "prove that the [settlements] serve[] the public interest." *See Lynch v. City of Alhambra*, 880 F.2d 1122, 1128 (9th Cir. 1989). This the SEC cannot do.

The panel committed several errors in reaching the opposite conclusion. For one, the panel, purporting to apply *Rumery*, held that Petitioners' "facial" challenge to the SEC's gag Rule could not be sustained but that the public interest might weigh against enforcing the speech-suppressant provisions in particular cases. *See Powell*, 149 F.4th at 1043-44. Not only does this ignore the fact that Petitioners also challenged the Rule as applied, *see* Pet. for Reh'g at 11, but it also misunderstands *Rumery*. "[U]nder *Rumery* there must … be a case-specific showing" that *each* government-demanded waiver of rights is appropriate, not a "blanket policy" of demanding waivers in a whole "class of cases." *Cain v. Darby Borough*, 7 F.3d 377, 382-83 (3d Cir. 1993) (en banc). As this Court has recognized, "the *Rumery* Court[] emphas[ized] a case-by-case analysis …. [A] district court [must] hear the evidence and evaluate whether the public interest is served by enforcement of [each] agreement." *Lynch*, 880 F.2d at 1127-28. The SEC's adoption of a blanket policy requiring speech-suppressant clauses in its settlements forecloses case-by-case consideration. And since the panel's approval of this practice "conflicts with a decision of th[is] [C]ourt"— namely, *Lynch*—and "with a decision of the United States Supreme

9

Court," Fed. R. App. P. 40(b)(2)—namely, *Rumery*—rehearing is warranted.

The panel discounted the blanket nature of the SEC's policy by remarking that, if the Commission "seek[s] to reopen the civil enforcement proceedings" based on a gag-clause violation in a particular case—or if a defendant moves for relief from a consent judgment—a court would address any First-Amendment issue at that time. *Powell*, 149 F.4th at 1044-45. But courts have held that First-Amendment objections are insufficient grounds for relief from a consent judgment in an SEC action. *See SEC v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022); *SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021). Nor do courts usually permit parties to a consent decree defensively challenge its validity in subsequent proceedings to enforce that decree. *See Siris v. SEC*, 773 F.3d 89, 96 (D.C. Cir. 2014). The panel's expectation that defendants could assert future "as-applied" challenges to SEC settlements under such circumstances is therefore dubious.

The panel also seemed unconcerned that "Rule 202.5(e) [is] non-negotiable," remarking that "defendants in SEC enforcement actions are often sophisticated players who are represented by counsel." *Powell*, 149

F.4th at 1042. But a lawyer makes no difference when there is nothing to negotiate. That regulation, which has the force of law, compels the Commission to refuse to settle enforcement proceedings unless the target submits to a settlement that includes a gag provision, no matter how skilled the settling defendant's lawyer may be. Pet. for Rev., Ex. A at 3.

The programmatic nature of the SEC's policy is enough to invalidate it under the *Rumery* public-interest test. But there are other reasons why the public ought not be deprived of its right to hear from defendants settling SEC enforcement actions.

The First Amendment, of course, "serves significant societal interests" beyond "those of the party seeking … vindication" of its right to speak. *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978). And considering the SEC's broad prerogatives, its settlement practices have grave societal consequences. In the last ten fiscal years alone, the SEC brought 4,752 standalone enforcement actions (which involved far more defendants). *See* 2024 Rep. at 2; U.S. Sec. & Exch. Comm'n, Div. of Enf't, 2020 Annual Report 16 (Nov. 2, 2020), https://www.sec.gov/files/enforcement-annual-report-2020.pdf. It is fair to say, then, that thousands are forever silenced about the SEC's

allegations against them. The public should be able to hear defendants' views on the propriety of those allegations. That many SEC defendants are public figures reinforces that the SEC's activities are matters of public concern. *See, e.g.*, *SEC v. Musk*, No. 18-CV-8865, 2022 WL 1239252 (S.D.N.Y. Apr. 27, 2022), *aff'd*, No. 22-1291, 2023 WL 3451402 (2d Cir. May 15, 2023).

Compounding the problem is the SEC's use of regulation-by-settlement tactics. Even when the Commission's "legal theory is new and untested," for a defendant, "the pressure to settle is over-powering." Andrew N. Vollmer, *Four Ways to Improve SEC Enforcement*, 43 Sec. Reg. L. J. 333, 336 (2015) (SEC's former General Counsel). Settlement affords regulators "extraordinary discretion" to press "novel legal theories" that "no judge will ever scrutinize"—since those regulators can simply "threaten the industries with the risk of such large penalties that they'll agree to a deal." Robert Reich, *Smoking, Guns*, Am. Prospect (Dec. 19, 2001), https://prospect.org/features/smoking-guns/. The SEC has made no bones about this, with a former chair declaring, "we must be aggressive and creative in the way we use [our] enforcement tools …." Mary Jo White, *Deploying the Full Enforcement Arsenal*, Council of

Institutional            Invs.        (Sept.           26,            2013),
https://www.sec.gov/news/speech/spch092613mjw. The potential for
abuse of this authority highlights the need for open discourse regarding
SEC allegations. The First Amendment "protect[s] the free discussion of
governmental affairs" so that "abuses of power by governmental officials"
may be exposed. *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). Indeed,
even *private* companies' inclusion of non-disparagement clauses in
consumer contracts was recently banned, *see* 15 U.S.C. §45b; the public-
interest rationale for this prohibition surely applies with greater force to
*government* agencies like the SEC.

The public's interest in monitoring the SEC suffers acutely when
the Commission silences targets of its investigations, as they are—to
quote caselaw on public employees' speech—"the members of [the]
community most likely to have informed and definite opinions" on the
SEC's practices and, "[a]ccordingly, it is essential that they be able to
speak out freely" on that subject. *Pickering v. Bd. of Educ.*, 391 U.S. 563,
572 (1968). Instead, settling parties must sit quietly while the SEC freely
propagates its own account, resulting in the public hearing a one-sided
narrative.

Also concerning from a public-interest standpoint is that the SEC's gag clauses contemplate suppression of *truthful* speech—in that they qualify their prohibition on publicly criticizing the SEC's allegations with the proviso that "[n]othing in this paragraph affects Defendant's … testimonial obligations." *SEC v. Bhardwaj*, No. 1:22-CV-06277, 2024 WL 80104, at *3 (S.D.N.Y. Jan. 8, 2024). By stipulating that settlors *may* criticize the SEC's allegations if "testimonial obligations" of truthfulness so require, the SEC all but admits that it is suppressing truthful criticism in all other (*i.e.*, non-testimonial) situations.

Citing these sorts of public-interest concerns, many cases have invalidated contractual gag clauses, regardless of whether coercion was involved. *See* Gordon, *supra*, at 372-73 (citing cases). Even when speech-suppressant injunctions are the "result of private contract rather than government censorship," courts have been "hesitant to approve such an injunction." *Ronnie Van Zant, Inc. v. Cleopatra Records, Inc.*, 906 F.3d 253, 257 (2d Cir. 2018). Gag provisions in settlement agreements are suspect precisely because they "disserve[] the values protected by … the First Amendment …." *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002).

This case is reminiscent of one in which the Fourth Circuit, applying *Rumery*, held that a would-be plaintiff who settled her civil rights claims against city police was not bound by "the non-disparagement clause" in her settlement agreement: "when the government … makes a police-misconduct claimant's silence about her claims a condition of settlement …, there can be no serious doubt that the government has used its power in an effort to curb speech that is not to its liking." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 224 (2019). "[E]nforcement of [such a] clause … was contrary to the citizenry's First Amendment interest in limiting the government's ability to … remove speech critical of the government from the public discourse." *Id.* at 224-25. Here, too, a powerful law-enforcement agency is using the same tactics to silence those who may be its most potent critics: defendants who settle the SEC's charges against them. The same interests counsel strongly against the SEC's policy. *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994) ("[A] court should consider … whether a party benefitting from the order of confidentiality is a public entity or official..... If [so] …, that should be a factor weighing against entering or maintaining an order of confidentiality.").

15

What public interests are on the other side of the ledger? The panel was persuaded by the SEC's fear that "[t]he absence of a policy like Rule 202.5(e) could lead the SEC to requiring more outright admissions or settling fewer cases …." *Powell*, 149 F.4th at 1044. But this is simply a concern about self-inflicted harm: if the Commission chooses to require more outright admissions because it can no longer silence settling parties, that is the Commission's problem. To the SEC's worry that not silencing settling defendants would allow them to tell the public a self-serving account of the charges after settlement, the remedy is not for the Commission to undertake adverse official action. Rather, if "the SEC is not pleased by a defendant's remarks, the SEC may engage in its own expression countering those remarks …. The SEC here 'has not shown, and cannot show, why counter speech would not suffice to achieve its interest.'" Smolla, *supra*, at 19 (quoting *United States v. Alvarez*, 567 U.S. 709, 726 (2012) (plurality opinion)).

It is noteworthy, on that score, that the SEC's practice of forbidding criticism of its charges by settling defendants is hardly ubiquitous. FPF knows of no prosecutor who insists on similar provisions in plea agreements. Granted, the Commodity Futures Trading Commission has

a regulation requiring similar speech-suppressant clauses in settlements, and the New York Attorney General frequently demands such provisions in civil settlements, *see* Gordon, *supra*, at 338-39, but most other law-enforcement entities apparently function just fine without this sort of policy.

All told, the SEC's policy "is a stew of confusion and hypocrisy…. [A]n agency … is saying, in effect, 'Although we claim that these defendants have done terrible things, … we do not propose to prove it, but will simply resort to gagging their right to deny it.' The disservice to the public inherent in such a practice is palpable." *SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 309 (S.D.N.Y. 2011). At the very least, the Commission must prove the necessity for its speech-suppressant demands on a case-by-case basis, which is why the SEC abused its discretion in denying Petitioners' request to amend its regulation unconditionally requiring gag clauses.

## III. The SEC's speech-suppressant Rule violates the First Amendment's guarantee of press freedom and the right to hear speech.

Worse still, the panel ignored the claims of several Petitioners, who are media outlets challenging the SEC's gag policy as a violation of *their* First-Amendment rights to gather information.

"[T]he First Amendment protects the media's right to gather news." *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988). Thus, where there is "a willing speaker …, as is the case here," "the [Amendment's] protection afforded is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). But the panel overlooked entirely the claims of media Petitioners *The Cape Gazette* and *Reason Foundation*, which were supported by declarations that parties currently bound by SEC gag clauses would speak to these outlets if it were not for the speech-suppressant provisions. *See* FER 3-5, 19-20. These gagged defendants qualify as "'willing' speakers" even if one believes (incorrectly) that "they agreed to" those provisions voluntarily when they were imposed. *United States v. Wecht*, 484 F.3d 194, 202 (3d Cir. 2007). "[T]he consent of the parties to an order limiting speech is

irrelevant … as long as the third party can demonstrate that an individual subject to the order would speak more freely if the order is lifted or modified." *Id.* at 203; *see also CBS Inc. v. Young*, 522 F.2d 234, 240-41 & n.1 (6th Cir. 1975); *Overbey*, 930 F.3d at 228; *Albuquerque J. v. Jewell*, 17 P.3d 437, 440 (N.M. 2001); *cf. Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 n.6, 929 (5th Cir. 1996). The panel's refusal to consider this argument from media Petitioners regarding their own First-Amendment rights "conflicts with [these] authoritative decision[s] of []other … court[s] of appeals," Fed. R. App. P. 40—another consideration favoring *en banc* rehearing, *see United States v. Jose*, 131 F.3d 1325, 1327 (9th Cir. 1997) (en banc).

Since the media Petitioners are appropriate parties to invoke "listeners' rights," the panel should have considered their arguments on the merits. And although there is some ambiguity as to what standard of review governs listeners' First-Amendment challenges to gag orders that formally bind only willing speakers, *see* 2 Smolla & Nimmer on Freedom

of Speech §15:42 (Oct. 2025 update), the SEC's speech-suppressant orders cannot withstand any relevant standard that may apply.[2]

The SEC has suggested in the past that its speech-suppressant provisions are justifiable under the caselaw upholding gag orders on trial participants. *See* Mem. in Opp. to Mot. for Relief from J. at 18, *SEC v. Allaire*, No. 1:03-cv-4087-DLC (S.D.N.Y. June 18, 2019). But "First Amendment doctrines" still "place significant restrictions on the power … to control the speech of participants in [adjudicatory] proceedings." 2 Smolla & Nimmer, *supra* §15:42. "Generally speaking, gag orders on trial participants have been upheld only where necessary either to ensure the impartial administration of justice in pending proceedings, or to prevent dissemination of … confidential information acquired by

---

[2] "Some courts have treated gag orders" under these circumstances "as typical prior restraints and have applied the sort of exacting scrutiny that was employed in *Nebraska Press* [*Ass'n v. Stuart*, 427 U.S. 539 (1976)]. Others have reviewed such gag orders under the 'substantial likelihood of material prejudice' standard approved in *Gentile* [*v. State Bar of Nev.*, 501 U.S. 1030 (1991)]. Still others have reviewed [them] … under a 'reasonable likelihood of prejudice' standard." *WXIA-TV v. State*, 811 S.E.2d 378, 386-87 (Ga. 2018), *disapproved of on other grounds by Hart v. State*, 917 S.E.2d 631 (Ga. 2025). All these standards hinge on the likelihood of prejudice to the outcome of a pending or impending trial, which is not an issue where, as here, there is a *settlement*. *See Neb. Press*, 427 U.S. at 569; *Gentile*, 501 U.S. at 1076.

20

participants through their involvement in the trial process." Gordon, *supra*, at 377. Neither rationale can sustain the SEC's gags. The suppressed speech—*i.e.*, settling parties' views on the SEC's allegations—is not "likely to have a materially prejudicial effect" on "a pending case" (since proceedings have been *settled*), *Gentile*, 501 U.S. at 1076; *Hunter v. Va. State Bar ex rel. 3d Dist. Comm.*, 744 S.E.2d 611, 619 (Va. 2013), nor is that speech confidential "information … obtained as a result of" those parties' "participation in the proceedings," *Butterworth v. Smith*, 494 U.S. 624, 632-33 (1990). Courts reviewing media challenges to gag orders based on the right to gather information have applied similar scrutiny and invalidated the orders where there was minimal risk of either improperly influencing proceedings or divulging private information gleaned through participation in litigation (even where gagged parties consented to the orders when they were entered). *See Young*, 522 F.2d at 239, 240 n.1; *Davis*, 78 F.3d at 927 n.6, 929; *Marcus v. St. Tammany Par. Sch. Bd.*, No. 95-CV-3140, 1997 WL 313418, at *7 (E.D. La. June 9, 1997). The same result should obtain here.

Even if this Court were to treat SEC gag clauses as typical, viewpoint-based restrictions on speech (rather than as trial-related gag

orders) and apply the usual "strict-scrutiny" standard, the provisions still violate the First Amendment. *See* Gordon, *supra*, at 376-80.

The SEC's policy, therefore, inhibits the First-Amendment right of the public to hear speech on important topics without adequate justification. This is yet another reason why the panel's decision, which ignored this issue altogether, cannot stand.

## CONCLUSION

The SEC unconstitutionally uses threats of official retaliation to cow targets of its enforcement actions into silence. This violates not only the settling defendants' rights, but also the public's First-Amendment right to receive uninhibited discourse about government activity. In upholding the Commission's practice, the panel short-changed both of these interests. FPF submits that rehearing is therefore warranted.

October 2, 2025

Respectfully submitted,

/s/ *Donald M. Falk*
Donald M. Falk
  *Counsel of Record*
SCHAERR | JAFFE LLP
One Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

Aaron Gordon
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
agordon@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 29(b) and 9th Circuit Rule 29-2(c)(2) because it contains 4,197 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

*/s/ Donald M. Falk*
Donald M. Falk

*Counsel for Amicus Curiae*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2025, the foregoing brief was electronically filed with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

October 2, 2025

*/s/ Donald M. Falk*
Donald M. Falk

*Counsel for Amicus Curiae*